**Eduardo J. FRUGONE, Appellant,**

v.

**CENTRAL INTELLIGENCE AGENCY, Appellee.**

**No. 97–5199.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 2, 1999.

Decided March 12, 1999.

Bernard Fensterwald, III, argued the cause and filed the brief for appellant.

Elizabeth Ross Withnell, Attorney–Advisor, U.S. Department of Justice, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

Before: GINSBURG, HENDERSON and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Eduardo Frugone, who claims to have been employed by the Central Intelligence Agency, asked that agency to provide him with documents related to his employment. The CIA denied his request, refusing either to confirm or to deny that it had any information about him. Frugone then sued the CIA under the Freedom of Information Act, 5 U.S.C. § 552, to force it to disclose the information he sought. The district court granted summary judgment for the agency on the ground that its response was justified under Exemptions 1 and 3 to the FOIA, 5 U.S.C. §§ 552(b)(1) and (b)(3). Frugone now appeals, contending that the Government waived its right to withhold the relevant doc-

uments when the Office of Personnel Management sent him a series of letters that, he alleges, confirmed his status as a former employee of the CIA. We affirm the judgment of the district court.

### I. Background

Frugone, a resident of Chile, says he worked for the CIA for 15 years as a "covert employee." In an effort to secure retirement benefits from the Government, he contacted the OPM in 1990. OPM employees wrote him several letters explaining that, because his records were in the custody of the CIA, his inquiries should be directed there. A letter from the OPM Office of Retirement Programs, for example, informed him that "[s]ince your records are currently maintained by the CIA Retirement and Disability System ... we have forwarded a copy of your correspondence to them."

Frugone then wrote to the CIA directly. In response, he received a letter from the director of an otherwise unidentified "Office of Independent Contractor Programs," which said that though Frugone had paid Social Security taxes in the past, he had not paid them in enough calendar quarters to make him eligible for benefits. The letter did not identify the employment with respect to which Frugone had participated in the Social Security system.

Not satisfied with this answer, Frugone filed a FOIA request with the CIA for all records pertaining to himself or to projects with which he was involved while employed by the agency. When the CIA informed him that it would not be able to respond to his application within the ten day period then prescribed by 5 U.S.C. § 552 (a)(6)(A)(i), Frugone filed this lawsuit. Shortly thereafter, he received a letter from the CIA formally denying his request. The agency explained that "except in those instances wherein we have officially acknowledged a relationship with an individual, we are unable to so acknowledge."

The CIA then moved for summary judgment, arguing that its refusal either to confirm or to deny Frugone's employment was warranted under Exemptions 1 and 3 of the FOIA * because a more definitive response

---

* The FOIA does not apply to matters that are:

(1)(A) specifically authorized under criteria es-

would contravene the National Security Act of 1947, 50 U.S.C. § 403–3(c)(6), the Central Intelligence Act of 1949, *id.* § 403g, and Executive Order No. 12,958, 3 C.F.R. 333 (1996). In opposing summary judgment, Frugone made clear that the only issue before the court was whether the CIA may give a so-called "Glomar" response, *see Phillippi v. CIA,* 546 F.2d 1009, 1011 (D.C.Cir.1976) (CIA refused to confirm or deny existence of information regarding research vessel *Glomar Explorer*), where "another Executive Branch agency ... has ... already confirmed that [Frugone] was employed by CIA in the past." The district court granted the Government's motion for summary judgment "for essentially the reasons advanced by [the CIA]," and Frugone appealed.

## II. Analysis

■ We begin by noting the modesty of both the legal argument Frugone advances and the relief he seeks. No longer does he demand all records concerning himself and any projects with which he was purportedly associated; he would now be satisfied with an acknowledgment that the CIA employed him at one time and that it currently has custody of his personnel file. Moreover, he does not deny that under Exemptions 1 and 3 the CIA could, in the usual case, refuse to make even those disclosures. Instead, his sole claim on appeal is that because in this case the OPM acknowledged the existence of his relationship with the CIA, so too must the CIA.

Newly limited though it is, Frugone's claim still does not succeed. His argument begins and ends with the proposition that the Government waives its right to invoke an otherwise applicable exemption to the FOIA when it makes an "official and documented" disclosure of the information being sought. *Fitzgibbon v. CIA,* 911 F.2d 755, 765 (D.C.Cir. 1990). That observation is inapplicable to the present case, however, for we do not deem "official" a disclosure made by someone other than the agency from which the infor-

mation is being sought. *See, e.g., id.* at 765–66 (CIA could refuse to disclose classified information even if already reported in congressional committee report); *Afshar v. Department of State,* 702 F.2d 1125, 1133 (D.C.Cir.1983) (same, regarding information reported in book by former CIA official); *Phillippi v. CIA,* 655 F.2d 1325, 1330–31 (D.C.Cir.1981) (same, regarding information reported in book by former Director of Central Intelligence); *Salisbury v. United States,* 690 F.2d 966, 971 (D.C.Cir.1982) ("[B]are discussions by this court and the Congress of [the National Security Agency's] methods generally cannot be equated with disclosure by the agency itself of its methods of information gathering"); *accord, Alfred A. Knopf, Inc. v. Colby,* 509 F.2d 1362, 1370 (4th Cir.1975) ("It is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so").

Frugone protests that in each of our prior cases the information at issue reached the public by way of the Congress or the media; a different result would have obtained, he suggests, had the initial disclosure been made by an agency of the Executive Branch, such as the OPM here. Neither law nor logic supports that position, however.

· In *Military Audit Project v. Casey,* 656 F.2d 724 (1981), this court rejected a claim that because the National Science Foundation had already issued a memorandum describing the function of the once-secret vessel *Glomar Explorer,* the CIA could not invoke an otherwise applicable exemption to the FOIA with respect to the same information. Because CIA officials stated in affidavits that confirmation of the purpose of the craft would remove any "lingering doubts" that a foreign intelligence service might have on the subject, and that the perpetuation of such doubts may be an important means of pro-

---

tablished by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order; [or] ...

(3) specifically exempted from disclosure by statute ... provided that such statute (A) re-

quires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. ...

tecting national security, release of the requested material would still have had national security significance. *Id.* at 745. Even if the NSF memorandum was correct, therefore, we concluded that its disclosure did not affect the CIA's right to invoke Exemptions 1 and 3 of the FOIA. *See id.* at 742–45.

The rationale of our decision in *Military Audit Project* applies with equal force to the present case. The CIA has again submitted an affidavit persuasively describing, both generally and with reference to this case, the untoward consequences that could ensue · were it required either to confirm or to deny statements made by another agency. If, for instance, the CIA were officially to admit that it had employed Frugone (assuming it had), that could cause greater diplomatic tension between Chile and the United States than do the informal, and possibly erroneous, statements already made by the OPM; alternatively, if the CIA were officially to deny that it had employed Frugone (assuming it had not), that would lessen the burden facing a foreign intelligence agency attempting to track the CIA's covert activities abroad. Whatever the true state of affairs, therefore, the CIA avers that requiring it to break its silence upon the subject of whether it had employed Frugone would harm the interests of the United States.

Mindful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns. *See id.* at 745 (government affidavits regarding harm that disclosure could cause to national security entitled to "substantial weight"). Consequently, we cannot treat the statements of the OPM upon which Frugone relies as tantamount to an official statement of the CIA.

■ Not only is Frugone's argument foreclosed by precedent, it is also difficult to square with the National Security Act, which requires the Director of Central Intelligence to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403–3 (c)(6). Common sense suggests that the DCI must have authority to maintain secrecy commensurate with this responsibility. If Frugone were right, however, then other agencies of the Executive Branch—including those with no duties related to

national security—could obligate agencies with responsibility in that sphere to reveal classified information. We think it very unlikely that the Congress intended the FOIA to create such an anomalous result. Accordingly, we hold that only the CIA can waive its right to assert an exemption to the FOIA.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

*Affirmed.*