STUDENTS AGAINST GENOCIDE (SAGE), *et al.*, Plaintiffs,

v.

DEPARTMENT OF STATE, *et al.*, Defendants.

No. CIV.A. 96–667CKKJMF.

United States District Court, District of Columbia.

May 25, 1999.

George Simons LaRoche, Takoma Park, MD, for plaintiffs.

Anne L. Weismann, U.S. Dept. of Justice Civil Div., Washington, DC, Pamela Jane Aronson, U.S. Dept. of Justice, Washington, DC, for defendants.

## REPORT AND RECOMMENDATION

FACCIOLA, United States Magistrate Judge.

This Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") action is before me for a report and recommendation on *Defendants' Motion for Summary Judgment* ("Defs.Mot."), *Plaintiffs' Opposition to Defendants' Motion for Partial [sic] Summary Judgement* ("Plains.Opp."), and *Reply in Support of Defendants' Motion for Summary Judgment* ("Defs.Reply"). For the reasons stated below, I recommend that defendants' motion for summary judgment be granted.

### I. BACKGROUND

Plaintiffs are several citizens' organizations, members of Congress, and individuals who describe themselves as "concerned with U.S. policy on genocide in Bosnia." *Complaint* ("Compl.") at 3. They are seeking information regarding "massive human rights violations by Bosnian Serb forces in the Srebrenica area of Bosnia and other places." *Id.* Defendants are the U.S. Department of State ("DOS"), the U.S. Department of Defense ("DOD"), and the U.S. Central Intelligence Agency ("CIA"). Defendants conducted searches for the requested information and released, in whole or in part, materials which they assert are responsive to the requests. Defendants also simultaneously claimed the right to withhold other potentially responsive documents based on exemptions to FOIA.

In two letters, dated October 12, 1995 and October 18, 1995, plaintiffs submitted FOIA requests to DOS, DOD, and CIA regarding four categories of information. After this action was filed on April 4, 1996, the parties agreed to divide the initial FOIA request into two separate requests deemed the "First FOIA Request" and the "Second FOIA Request". The parties also agreed that they would proceed with the litigation based on the First FOIA Request and that plaintiffs would amend their complaint to delete any claims based on the Second FOIA Request.

On September 29, 1998, the court granted defendants' motion for partial summary judgment as to the First FOIA Request. The court also ordered plaintiffs to file *inter alia* a praecipe of dismissal without prejudice as to the Second FOIA Request or an explanation as to why dismissal without prejudice was not appropriate. Plaintiffs complied with the court's order and filed a praecipe of dismissal.

Plaintiffs then filed a motion to reconsider the order granting partial summary judgment, proffering additional evidence in support of their motion to reconsider. The court issued an order requiring defendants to respond to the proffer of supplemental evidence and also to state whether or not there were any outstanding FOIA requests pending before DOS, DOD, or CIA. Defendants responded by stating that there were no outstanding requests pending before any governmental agencies but that one document which was originally referred to other agencies for review in connection with the Second FOIA Request actually contained information which might

be responsive to the First FOIA Request. By letter dated December 18, 1998, the Defense Intelligence Agency ("DIA"), an agency within DOD, informed plaintiffs that it was withholding the document under FOIA Exemption 1, 5 U.S.C. § 552(b)(1). On January 29, 1999, the court denied plaintiffs' motion for reconsideration, thus leaving only one remaining issue before this court: whether DIA's withholding of this document under FOIA Exemption 1 was proper and therefore requires that the court grant its motion for summary judgment.

## II. DISCUSSION

### A. Legal Standard

██ In a FOIA action, "the agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. U.S. Department of Justice*, 705 F.2d 1344, 1350 (D.C.Cir.1983). In order to meet that burden, the agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act[ ]." *National Cable Television Assn. v. Federal Communications Commission*, 479 F.2d 183, 186 (D.C.Cir.1973). In addition, even in the national security context, the agency must show that reasonably segregable portions of non-exempt information have been produced. *Ray v. Turner* 587 F.2d 1187, 1197 (D.C.Cir.1978); 5 U.S.C. § 552(b). The court reviews the claimed exemptions *de novo*. 5 U.S.C. § 552(a)(4)(B).

██ In order to meet its burden of proof, it is sufficient for the agency to submit affidavits by individuals with personal knowledge of the processing of the request. *Weisberg v. Department of Justice*, 705 F.2d at 1351; Fed.R.Civ.P. 56(e). This circuit has held that "if the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith,

then summary judgment is appropriate without *in camera* review of the documents." *Hayden v. National Security Agency*, 608 F.2d 1381, 1387 (D.C.Cir. 1979); *see Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C.Cir.1978). In national security cases dealing with classified information, "Congress has instructed the courts to accord 'substantial weight' to agency affidavits." *Id.* at 352, *quoting* S.Rep. No. 93–1200, 93rd Cong., 2d Sess. 12, 1974 U.S.Code Cong. & Ad. News, 6285 (1974).

### B. Analysis

FOIA Exemption 1 states that the provisions of FOIA do not apply to matters that are "(A) specifically authorized to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to Executive order." 5 U.S.C. § 552(b)(1). Executive Order 12958 sets out a system of procedures and bases for classifying national security information. "Information may not be considered for classification unless it concerns . . . (c) intelligence sources and methods." Exec. Or. 12958, § 1.5(c), *reprinted in* 50 U.S.C.A. § 435 note (West Supp.1998).

In support of its motion for summary judgment, defendant DIA states the following:

> As explained in the Richardson declaration, the information discussed in the document at issue was obtained from classified sources and methods and 'the release of any portion of the material would tend to reveal those sources and methods used to collect the material.' . . . The disclosure of those sources and methods 'reasonably could be expected to enable foreign authorities to identify U.S. intelligence activities, methods and sources and to take counter measures which would damage the ability of the U.S. government to acquire information that is often critical to the formulation of

'U.S. foreign policy and the conduct of foreign relations.'

Defs. Mot. at 7.

■ Plaintiffs, on the other hand, contend that defendants have in effect waived their right to claim any privilege to the document because the information was already disclosed to foreign governments when then U.N. Representative Madeline Albright shared it with the representatives of other nations at a meeting of the U.N. Security Council. Plains. Opp. at 3–4. *See Students Against Genocide v. Department of State,* No. Civ. A. 96–667, 1998 WL 699074 (D.D.C. Aug.24, 1998).

It does not follow, however, that merely because classified information has been shared with foreign governments that national security has been compromised. Plaintiffs cannot simply substitute their judgment for the United States government's judgement that additional disclosure would be harmful. Furthermore, this court has found no authority for the proposition that the sharing of classified information with foreign governments effects a waiver under FOIA.

In fact, defendants have identified case law in this jurisdiction which stands for the exact opposite proposition. In *Van Atta v. Defense Intelligence Agency,* No. CIV. A.87–1508, 1988 WL 73856 (D.D.C. July 6, 1988), plaintiffs filed a FOIA request with DIA for release of documents concerning sightings of Americans in Vietnam. Plaintiffs argued that because the information in the documents was shared with Vietnamese diplomats, FOIA exemptions did not apply. The court did not agree. "Plaintiff's more substantive argument— that there can be no harm from disclosure of the material because it has been previously disclosed to a foreign government— is inapposite. The government's decision to share information with a foreign power does not open that information to public scrutiny or undermine the reasons for non-disclosure." *Id.* at *2.

Additionally, in a series of decisions, this Circuit has considered when disclosure of information should be deemed to waive a FOIA exemption. These decisions cast an important light on plaintiffs' "waiver" theory.

In *Military Audit Project v. Casey,* 656 F.2d 724 (D.C.Cir.1981), the court was confronted with (1) a report by a Senate Committee about the potential use of deep sea mining technology for the raising of a sunken Russian submarine, (2) a memorandum to science writers and editors by the Deputy Head of the Public Information Branch of the National Science Foundation referring to a ship ("the Glomar explorer") being used to raise a sunken submarine and (3) a disclosure by a former CIA director of how this ship failed to raise the sunken submarine. The court of appeals held that these unofficial disclosures did not deprive the CIA of its right to claim that it should not be forced to disclose its records pertaining to the Glomar explorer and the work it did. The court of appeals rejected the argument that, once the "cat is out of the bag" because of unofficial disclosures, the agency loses its right to claim an exemption no matter how justified the agency's assertion that the national security would be jeopardized by additional disclosures.

Adding to its holding in *Military Audit Project v. Casey,* the court held that a FOIA plaintiff must show that the exact information it seeks is already in the public domain. Any showing whatsoever by the agency that the information sought is different from the information disclosed defeats the plaintiff's claim. *Afshar v. Department of State,* 702 F.2d 1125, 1130–1132 (D.C.Cir.1983).

Seven years later, in *Fitzgibbon v. Central Intelligence Agency,* 911 F.2d 755 (D.C.Cir.1990), a historian sought information about the disappearance of a foreign national who was thought to have disappeared in New York City. The court of appeals held that the FBI's disclosing to a Congressional committee protected infor-

mation concerning events at a certain point in time did not effect a waiver of the right to claim a privilege as to information about events which occurred either before or after that point in time. Thus, that certain information is in the public domain does not imply that further disclosure of other information would be harmless. Finally, in *Public Citizen v. Department of State,* 11 F.3d 198, 203 (D.C.Cir.1993), the court of appeals held that an agency does not waives its right to claim a FOIA exemption merely because it permits one of its officials to publicly discuss information contained within otherwise classified documents. Instead, there must be an official disclosure of the information sought: "Our decisions make it clear than an agency will not be held to have waived exemption 1 absent a showing by a FOIA plaintiff that the specific information at issue has been officially disclosed." *Id.* at 203.

When tested by these standards, plaintiffs' theory that Albright's disclosure to the members of the Security Council abolishes the agency's right to claim the relevant FOIA exemption collapses. First, contrary to plaintiffs' view, an agency does not waive a FOIA exemption unless and until that agency makes an official disclosure of the information sought. There has, of course, been no such official disclosure here. Second, plaintiffs do not even attempt to show that the precise information sought is already in the public domain. It certainly is not.

■ Furthermore, while these cases do not deal directly with the consequences of a disclosure by an Executive Branch official to foreign governments, they teach that there is certainly no "cat out of the bag" philosophy underlying FOIA so that any public discussion of protected information dissipates the protection which would otherwise shield the information sought. Instead, agencies lose FOIA exemptions only when they officially release information or when the exact information is otherwise in the public domain. The studiously careful narrowness of this principle

warrants quick rejection of plaintiff's rhetorical flight of fancy that it is somehow offensive to democratic traditions to deny a citizen what the representative of a sometimes hostile foreign government is permitted to see. It is relatively easy to think of many reasons why an Executive Branch official would consider it crucial to national security to share certain information with that representative without thereby concluding at the same time that it would be equally beneficial for the information to be disseminated to everyone else. Indeed, if plaintiffs had their way, an Executive Branch official might well have to conclude that she will have to forego disclosing information she thinks vital to share with foreign governments lest her doing so makes it generally available to everyone. Compelling her to do so interjects into the conduct of foreign relations an extraneous consideration which could do much more harm than good. Perhaps, Congress may someday see fit to so constrain the Executive Branch in its conduct of foreign relations. Until it does, there is no warrant for the judiciary to create the waiver plaintiff wants out of whole cloth.

■ Finally, according to the recent decision in *Frugone v. Central Intelligence Agency,* 169 F.3d 772 (D.C.Cir.1999), only the agency that is the original source of classified information can waive its right to assert an exemption under FOIA. Frugone, a Chilean resident who claimed to have worked for the CIA for 15 years, sought retirement benefits from the Office of Personnel Management ("OPM"). OPM directed Frugone to the CIA. When Frugone attempted to secure his records from the CIA, he was told that although he had paid Social Security taxes in the past, he had not paid sufficient taxes to become eligible for benefits. Furthermore, the CIA's response did not identify the capacity in which Frugone had participated in the Social Security system.

Frugone then filed a FOIA request with the CIA for his work records. The CIA

claimed that the information was privileged under FOIA Exemptions 1 and 3. Citing *Military Audit Project v. Casey*, *supra*, 656 F.2d at 724, the court held that "[i]f Frugone were right, however, then other agencies of the Executive Branch— including those with no duties related to national security—could obligate agencies with responsibility in that sphere to reveal classified information. We think it very unlikely that the Congress intended the FOIA to create such an anomalous result." *Frugone v. Central Intelligence Agency*, *supra*, 169 F.3d at 774.

Although in this case plaintiffs seek information from an agency within DOD, one which clearly has duties related to national security, the information was originally disclosed by now Secretary of State Madeline Albright acting in what was then her official capacity as United States Representative to the United Nations. She had no official capacity with DOD. Thus, DOD has not waived its right to claim the FOIA exemption because of anything she did.

### C. Adequacy of DIA's Vaughn Declaration

■ Before granting DIA's motion for summary judgment on the basis of its properly claimed exemptions, it is necessary to address the sufficiency of the DIA's *Vaughn* declaration. *See Miller v. Casey*, 730 F.2d 773, 777 (D.C.Cir.1984). The *Vaughn* declaration for each agency is comprised of the affidavit and the attached exhibits. *See Vaughn v. Rosen*, 484 F.2d 820, 827–828 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). This circuit has held that, in applying the "substantial weight" standard to agency affidavits, summary judgment may be granted in Exemption 1 and Exemption 3 cases if the affidavits "contain reasonable specificity of detail rather than merely conclusory statements, and if they are not

called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. Central Intelligence Agency*, 629 F.2d 144, 148 (D.C.Cir.1980); *see also King v. Department of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987). In *Halperin*, the court reasoned that a less detailed inquiry is required in national security FOIA cases than for other exemptions because judges lack the agency's expertise in national security issues. *Id.* Significantly, however, the affidavits must permit meaningful review, and therefore must explain the danger to national security which is risked by disclosure. *See King v. Department of Justice*, *supra*, 830 F.2d at 224. As concluded in *Van Atta v. Defense Intelligence Agency*, "summary judgement may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Van Atta v. Defense Intelligence Agency*, *supra*, 1988 WL 73856, at *2 (D.D.C. July 6, 1988).

■ In this case, the agency's affidavit, together with DIA's assertions that the materials meet both the procedural and substantive criteria for proper classification under Executive Order 12958, permit the conclusion that DIA has met its burden under FOIA with regard to its Exemption 1 claims. As noted above, in the national security context, agency affidavits are given deference by courts so long as the affidavits are specific enough to permit the required *de novo* review. After reviewing the *Vaughn* declaration, I conclude that as to the document withheld in full [1] pursuant to Exemption 1, DIA has fulfilled its obligations under FOIA.

---

1. DIA states that "the information discussed in the document at issue was obtained from classified sources and methods and 'the release of any portion of the material would tend to reveal those sources and methods

used to collect the material.'" Defs. Mot. at 7. Thus, I find that the information in this document is not segregable and defendants shall not be required to disclose any portion of it.

### III. CONCLUSION

Because I have concluded that DIA properly asserted an exemption to certain withheld material and produced sufficient affidavits in compliance with their obligations under FOIA, I recommend that the motion for summary judgment be granted.

**The parties should note that failure to file timely objections to the findings and recommendations set forth in this report in accordance with Local Rule 504(b) for the United States District Court for the District of Columbia may waive their right of appeal form an order of the District Court adopting such findings and recommendations.** *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).