# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 20, 2023          Decided June 7, 2024

No. 23-5017

NATIONAL SECURITY ARCHIVE,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-02857)

———

*Hilary T. Jacobs* argued the cause for appellant. With her on the briefs was *John S. Guttmann*.

*Lewis S. Yelin*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Sharon Swingle*, Attorney.

Before: RAO and CHILDS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* CHILDS.

CHILDS, *Circuit Judge*: In 1983, during the Cold War, Leonard H. Perroots, then an Assistant Chief of Staff for Intelligence in the United States Air Forces in Europe, allegedly recommended a course of action to his Commander in response to an elevated alert status demonstrated by the military forces of the Union of Soviet Socialist Republics ("Soviet Union"), which helped avert a nuclear crisis. Subsequently, in January 1989, Lieutenant General Perroots wrote an End of Tour Report Addendum ("Perroots Memo") to detail the "chain of events" from 1983 to help the U.S. Intelligence Community learn lessons "as relates to our [Indications and Warning] capability and exercise planning." JA250, JA278.

Approximately thirty-two years later, a non-governmental research institute known as The National Security Archive ("Archive") submitted a Freedom of Information Act ("FOIA") request to the Central Intelligence Agency ("CIA") seeking disclosure of the Perroots Memo. The CIA produced the Memo's cover letter but did not provide any further substance of the Perroots Memo's text. Thereafter, the Archive sued the CIA seeking to compel disclosure of the Perroots Memo under FOIA. The district court granted summary judgment in favor of the CIA because the Archive conceded that the response was justified under FOIA Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1) and (6), and the CIA had not waived its right to claim the exemptions. *Nat'l Sec. Archive v. CIA*, C/A No. 21-2857, 2022 WL 5062523, at *5 (D.D.C. Oct. 4, 2022). The district court denied the Archive's motion to amend judgment as well. *Nat'l Sec. Archive v. CIA*, C/A No. 21-2857, 2022 WL 18493099, at *1 (D.D.C. Nov. 16, 2022). The Archive appeals both decisions. Upon *de novo* review, we affirm.

**I.**

The Archive is an "independent non-governmental research institute and library" that "promote[s] research and public education about the U.S. governmental and national security decision-making process." Compl. ¶ 4 (JA002). The Archive operates as a "repository of government records on a wide range of topics pertaining to the national security, foreign, intelligence, and economic policies of the United States." *Id.*

In February 2021, the United States Department of State ("DOS") published a transcribed version of the Perroots Memo in a volume of the Foreign Relations of the United States ("*FRUS*") series documenting 1981–1988. The *FRUS* is a statutorily mandated "official documentary historical record of major U.S. foreign policy decisions and significant diplomatic activity." Office of the Historian, U.S. Dep't of State, *About the Foreign Relations of the United States Series*, https://history.state.gov/historicaldocuments/about-frus, *archived at* https://perma.cc/3RQZ-DVPM; 22 U.S.C. § 4351(a). Publication in the *FRUS* generally requires the DOS to obtain the respective agency's declassification of any relevant documents needed for publishing. *See* 22 U.S.C. § 4353(b)(1) (Any document published in the *FRUS* "shall be submitted to the respective originating agency for declassification review."). Accordingly, the *FRUS* cites to a CIA source and thanks CIA staff "for arranging full access to CIA records," JA269, and states that "[t]he declassification review of this volume . . . began in 2015 and was completed in 2019," JA135.

Six months after the *FRUS*'s release of *Volume IV: Soviet Union, January 1983–March 1985*, the Archive submitted a FOIA request to the CIA for the Perroots Memo. The CIA acknowledged but did not substantively respond to the

Archive's request. Consequently, in October 2021, the Archive filed suit in the D.C. District Court to compel disclosure of the Memo. In April 2022, as its "final response" to the Archive's FOIA request, *see* JA248, the CIA provided Perroots' cover letter and a completely redacted copy of the Memo, citing FOIA Exemptions 1 and 3 to justify the redactions.

The CIA next moved for summary judgment asserting that it properly withheld the Perroots Memo under FOIA Exemption 1, because the Memo contained "information that would tend to reveal specific intelligence activities, sources, and methods that are either still actively in use or which remain viable for use today," JA045–JA046; and under Exemption 3 in accordance with the National Security Act of 1947, identified by the CIA as an appropriate Exemption 3 qualifying statute, JA046. The Archive opposed the motion and argued that because the Memo was published in the *FRUS Volume IV: Soviet Union, January 1983–March 1985*, the exemptions were inapplicable due to the official acknowledgment doctrine and the public domain doctrine. The district court disagreed, finding that the CIA was not properly involved in the disclosure to the *FRUS* to establish either official acknowledgment or public disclosure. *Nat'l Sec. Archive*, 2022 WL 5062523, at *4. The district court granted the CIA's motion for summary judgment, concluding that the Perroots Memo was exempt from disclosure under FOIA Exemptions 1 and 3. *Id.* at *5. The district court then denied the Archive's motion to amend judgment, in which the Archive sought to have the court amend its order to require the CIA "'to subject the Perroots Memorandum to a reclassification review under Executive Order No. 13526,' which governs agency efforts to reclassify certain information." *Nat'l Sec. Archive*, 2022 WL 18493099, at *1. The Archive timely appealed the district court's decisions.

5

**II.**

**A.**

We have appellate jurisdiction under 28 U.S.C. § 1291 and review the district court's grant of summary judgment in a FOIA case *de novo*. *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014, 1020 (D.C. Cir. 2021) (citation omitted). In addition, our review of summary judgment "'[i]n the FOIA context . . . requires that we ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure.'" *Id.* (quoting *ACLU v. DOJ*, 655 F.3d 1, 5 (D.C. Cir. 2011)).

**B.**

Before turning to the merits, we first address the Archive's standing. "It is well established that a federal court cannot act in the absence of jurisdiction," and "[i]t is equally well established that Article III standing is a prerequisite to federal court jurisdiction." *Am. Libr. Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005) (citations omitted). The Archive has standing if it has (i) suffered "an 'injury in fact,'" such that its interest is "concrete and particularized" and "'actual or imminent,'" (ii) shown "a causal connection between the injury and the conduct," and (iii) a legally redressable injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). Addressing the injury prong, the Supreme Court has held that an informational injury is sufficient to satisfy standing under FOIA. *Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989). To demonstrate a "'sufficiently concrete and particularized informational injury,' the plaintiff must show that '(1) it has been deprived of information that . . . a statute requires the government . . . to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress

sought to prevent by requiring disclosure.'" *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (citation omitted).

The Archive's allegations establish informational standing under our case law.[1]  First, as to the informational injury components, and assuming for purposes of standing that the Archive will prevail on the merits, FOIA provides the Archive the right to seek the Perroots Memo because it is "designed 'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)); *see also Maloney v. Carnahan*, 45 F.4th 215, 217 (D.C. Cir. 2022) (Millett, J., concurring) (FOIA is an "example[] of [a] statute[] that create[s]" "an individual right to obtain information" and "'[a]nyone whose request for specific information has been denied has standing to bring an action[.]'" (citation omitted)). Second, we view the Archive's stated injury resulting from the inability to access the Perroots Memo as the type that FOIA's disclosure objectives directly prevent:

---

[1] We note that in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021), the Supreme Court observed that "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'"  We are bound by Supreme Court precedent, but *TransUnion* does not expressly overrule *Public Citizen*.  This Court is charged with following case law that directly controls a particular issue, "leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2038 (2023) (cleaned up).

> There is likely information of great historical value to the Archive that was not included in the [Perroots Memo's] transcription, but may be in the original form of the document. For instance, original documents often list the offices within specific agencies that received a document, specific individual recipients, special security designations, and individuals who were copied on the correspondence — information that is not necessarily captured in a transcription.

Compl. ¶ 25 (JA007). Accordingly, we find that the Archive suffered a concrete injury when the CIA refused its FOIA request for the Perroots Memo. Additionally, the Archive's injury is "'fairly trace[able]'" to the CIA's denial of its FOIA request, and it is likely that the injury would be "redressed by a favorable decision" by this Court. *Lujan*, 504 U.S. at 560–61. For these reasons, we find that the Archive has standing, and the Court has subject matter jurisdiction. We will now turn to the merits.

## C.

"Congress enacted . . . FOIA to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny, and thereby to achieve greater transparency in support of open government." *Insider Inc. v. GSA*, 92 F.4th 1131, 1133 (D.C. Cir. 2024) (cleaned up). To facilitate that objective, FOIA provides members of the public with the ability to request records from federal agencies—which an agency may only withhold by demonstrating the requested documents fall within one of nine statutory exemptions. *See* 5 U.S.C. § 552(b)(1)–(9); *Citizens for Resp. & Ethics in Washington v. DOJ*, 58 F.4th 1255, 1261 (D.C. Cir. 2023). Here, in response to the Archive's FOIA request for the

Perroots Memo, the CIA invokes Exemptions 1 and 3, which exempt from disclosure "matters that are—"

> (1)(A) **specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy** and (B) are in fact properly classified pursuant to such Executive order; . . . (3) **specifically exempted from disclosure by statute** (other than section 552b of this title), if that statute—
>> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(1), (3) (emphases added). The Archive does not contest the applicability of Exemptions 1 and 3. Rather, it contends the CIA waived its right to assert the exemptions through application of the official acknowledgment and public domain doctrines. We disagree.

### 1.

"The official acknowledgment doctrine holds that 'when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information.'" *Montgomery v. IRS*, 40 F.4th 702, 710 (D.C. Cir. 2022) (citation omitted); *see also Knight First Amend. Inst. v. CIA*, 11 F.4th 810, 813 (D.C. Cir. 2021) ("If an agency has 'officially acknowledged otherwise exempt information through prior

disclosure,' it has 'waived its right to claim an exemption with respect to that information.'" (citation omitted)). Information is considered "officially acknowledged" when it (1) is "as specific as the information previously released"; (2) matches "the information previously disclosed"; and (3) has already "been made public through an official and documented disclosure." *Fitzgibbons v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983)). With respect to the third element, "[d]isclosure by one federal agency does not waive another agency's right to assert a FOIA exemption." *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) (citing *Frugone v. CIA*, 169 F.3d 772, 774–75 (D.C. Cir. 1999)); *see also Knight First Amend. Inst.*, 11 F.4th at 816 ("We do not 'deem "official" a disclosure made by someone other than the agency from which the information is being sought.'" (citing *Frugone*, 169 F.3d at 774)).

The Archive contends that the official acknowledgment doctrine is applicable to the Perroots Memo because "(1) . . . the CIA was involved in the Perroots Memo transcription's publication, and (2) at least a portion of the text from the Perroots Memo is unquestionably public." Appellant's Br. 11. We reject these contentions because the record, as observed by the district court, contains classified, supplemental, ex parte, and in camera declarations which establish that the CIA was not involved in the disclosure of the Perroots Memo. *See Nat'l Sec. Archive*, 2022 WL 5062523, at *4 (JA086).

That the State Department thanked the CIA for its contribution and acknowledged the CIA as the source of the Perroots Memo in the *FRUS*'s *Volume IV: Soviet Union, January 1983–March 1985* is of no consequence: both were actions taken by the DOS, not the CIA. For the same reason, although the DOS is statutorily required to "submit[] to the

respective originating agency for declassification review," 22 U.S.C. § 4353(b)(1), its actions do not waive the CIA's right to assert FOIA Exemptions 1 and 3. Therefore, we affirm the district court's decision that the third element of the official acknowledgment doctrine remains unsatisfied and "that the CIA—and this includes the agency and its 'components'—was not properly involved in the [Perroots Memo]'s disclosure" to trigger waiver of FOIA Exemptions 1 and 3. *Nat'l Sec. Archive*, 2022 WL 5062523, at *4 (JA086).

**2.**

The Archive argues that application of the public domain doctrine equally necessitates disclosure of the Perroots Memo. In this regard, the Archive suggests that disclosure is appropriate because "the information requested is the same as what is publicly available in *Volume IV*": *Soviet Union, January 1983–March 1985*, and it is already part of the permanent public record based on its availability for viewing in numerous court records via a Public Access to Court Electronic Records account, or by accessing the "Internet Archive Way Back Machine, a non-profit 'digital library of Internet sites' that 'archive[s] the Internet itself.'" Appellant's Br. 15.

Despite the Archive's support for the existence of the public domain doctrine, we do not recognize that this exception is separate and distinct from the official acknowledgment doctrine. To this point, many of our decisions use the terms "public domain" and "official acknowledgment" interchangeably. *See, e.g.*, *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) ("A plaintiff mounting an official acknowledgment argument 'must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'" (citation omitted));

*Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure." (citation omitted) (emphasis in original)); *but see Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record."); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) ("This circuit has held that the government may not rely on an otherwise valid exemption to justify withholding information that is already in the "public domain.'"). As we have emphasized in our precedent, the mere public disclosure of information does not eliminate potential risks posed by further disclosure to national security interests—and cannot overcome an otherwise valid FOIA exemption. *See Afshar*, 702 F.2d at 1130 ("Also, even if a fact . . . is the subject of widespread media and public speculation, its official acknowledgment by an authoritative source might well be new information that could cause damage to the national security."). Because the CIA demonstrated the applicability of Exemptions 1 and 3, which the Archive failed to either directly or successfully challenge, we affirm the district court's decision to grant summary judgment to the CIA.

12

**D.**

The Archive also appealed the district court's denial of the Archive's motion to amend judgment requesting that the CIA "'subject the Perroots Memorandum to a reclassification review under Executive Order 13526,' which governs agency efforts to reclassify certain information." *Nat'l Sec. Archive*, 2022 WL 18493099, at *1 (citation omitted). However, in its briefing, the Archive failed to make any substantive arguments regarding its reclassification request. We ordinarily do not consider matters on appeal that are not specifically and distinctly argued in an appellant's briefs and therefore we decline to consider here the Archive's request to reclassify the Perroots Memo. *E.g.*, *Anna Jaques Hosp. v. Sebelius*, 583 F.3d 1, 7 (D.C. Cir. 2009) ("We will not consider 'asserted but unanalyzed' arguments because 'appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.'" (citation omitted)).

\*\*\*\*\*

For the foregoing reasons, we affirm the district court's judgment.

*So ordered.*