**PUBLIC CITIZEN, Appellant,**

v.

**DEPARTMENT OF STATE, Appellee.**

**No. 92–5125.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 19, 1993.

Decided Dec. 17, 1993.

Alan B. Morrison, argued the cause for the appellant. With him on the briefs was David C. Vladeck. Paul R.Q. Wolfson, entered an appearance.

Freddi Lipstein, Atty., U.S. Dept. of Justice, argued the cause for appellee. With her on the brief were J. Ramsey Johnson, U.S. Atty., and Leonard Schaitman, Asst. Director for the Dept. of Justice.

Before: EDWARDS, BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Appellant Public Citizen seeks disclosure pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988), of documents pertaining to a meeting between then-Ambassador to Iraq April Glaspie and Iraqi President Saddam Hussein on July 25, 1990, one week before Iraq invaded Kuwait and precipitated the Persian Gulf War. The documents at issue in this case, which were prepared by Glaspie for her superiors at the Department of State ("State"), include diplomatic cables, memoranda, and annotations concerning the meeting between Glaspie and Hussein. The trial judge performed *in camera* inspections of the disputed materials on three occasions, ultimately sustaining State's refusal to release the documents on the grounds that they are exempt from disclosure under both FOIA exemption 1,[1] which protects materials properly classified in the interest of national defense or foreign policy, and FOIA exemption 5,[2] which protects material that is predecisional and deliberative. *See, e.g., Access Reports v. Department of Justice,* 926 F.2d 1192, 1194 (D.C.Cir.1991).

In this appeal, Public Citizen does not contest the District Court's decision that the disputed documents are protected by both exemptions 1 and 5. Instead, appellant argues that State *waived* its right to assert these FOIA exemptions by permitting Glaspie to testify publicly about her meetings with Hussein before two congressional committees. We conclude, however, that the District Court was correct in holding that this court's prior decisions addressing waivers of exemption 1 control this case, and that appellant cannot satisfy the stringent test required to establish such a waiver. Accordingly, we hold that the disputed documents were properly withheld pursuant to FOIA exemption 1.

## I. BACKGROUND

### A. *Facts of the Case*

On July 25, 1990, seven days before Iraq invaded Kuwait, Iraqi President Saddam

---

**1.** 5 U.S.C. § 552(b)(1) (1988). Exemption 1 provides that FOIA does not apply to matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order[.]" *Id.*

**2.** 5 U.S.C. § 552(b)(5) (1988). Exemption 5 provides that FOIA does not apply to matters that are "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" *Id.*

Hussein summoned then-Ambassador Glaspie to meet with him. Hussein gave Glaspie no advance notice, so she was not able to contact the State Department for instructions or to arrange for a note-taker, as is the usual procedure for meetings with a head of state. Declaration of Jock Covey, Principal Deputy Assistant Secretary for the Bureau of Near Eastern and South Asian Affairs, Department of State, *reprinted in* Joint Appendix ("J.A.") 70–71.

At the conclusion of her meeting with Hussein, Glaspie returned to the United States Embassy in Baghdad and dictated two telegrams to State Department officials in Washington. The first cable contained highlights of her meeting with Hussein and her recommendations concerning it. *Id.* at J.A. 71. The second cable contained a more detailed account of both the meeting and her recommendations. *Id.* at J.A. 71–72. These cables are documents 1 and 2 at issue in this case. On July 26 and 29, 1990 two additional cables referring to the Glaspie–Hussein meeting were sent to the State Department from the United States Embassy in Baghdad. Declaration of Frank M. Machak, Information and Privacy Coordinator, State Department, *reprinted in* J.A. 42–44. These cables are disputed documents 3 and 4.

Glaspie returned to Washington on July 30, 1990, two days before Iraq invaded Kuwait. On September 23, 1990, with tensions mounting in the Persian Gulf region, the *New York Times* published a purported transcript of the Glaspie–Hussein meeting which had been released by Iraq, suggesting that Glaspie had told Hussein that the United States would not object if Iraq took military action against Kuwait.

While in Washington, Glaspie wrote two further memos recounting her meeting with Hussein, which she prepared in connection with State's consideration of how it would respond to the Iraqi transcript. *Id.* at J.A. 46–47. These memoranda are documents 6 and 7. At the request of one of her superiors at State, Glaspie also annotated a copy of the Iraqi transcript which was printed in the *Times. Id.* at J.A. 45. The annotated article is document 5.

Shortly after the end of the Persian Gulf War, members of Congress sought to question Glaspie in order to address concerns over her July 25, 1990 meeting with the Iraqi President. On March 20, 1991, Glaspie appeared before a public session of the Senate Foreign Relations Committee. On the following day she testified before the Middle East Subcommittee of the House Foreign Affairs Committee, again in an open session. The parties to this appeal disagree as to how extensively Glaspie's testimony before these committees covered her meeting with Hussein, but we need not delve into the transcripts of the hearings in order to resolve this case.

B. *Proceedings Below*

By letter dated March 25, 1991, Public Citizen made a FOIA request that State release all records relating to the Glaspie–Hussein meeting. State identified 31 responsive documents. Seventeen of these documents were released in their entirety, eight were released in part, and six were withheld. Public Citizen then filed suit seeking disclosure of the six documents that were withheld. Relying on affidavits from State Department officials, the Government moved for summary judgment. The affidavits averred that each of the documents at issue are properly classified as "confidential" in accordance with Executive Order 12,356, 47 Fed.Reg. 14,874 (1982), because they pertain to the "foreign relations and foreign activities of the United States" and/or contain "foreign government information." Brief for Appellee at 9–10. The affidavits also asserted that each of the documents is predecisional and deliberative and thus is protected by exemption 5. *Id.* at 10.

The District Court conducted an *in camera* review of the documents on November 27, 1991, January 10, 1992, and April 3, 1992. In his initial ruling based on the first two *in camera* examinations, the District Judge held that all but two of the documents, numbers 6 and 7, were properly withheld under FOIA exemptions 1 and 5. Jan. 14, 1992 Order, *reprinted in* J.A. 280. The District Court's January 14 Order, however, permitted State to present additional justification for withholding documents 6 and 7. Pursuant to the

District Court's invitation, State presented additional affidavits and the trial judge again examined documents 6 and 7 *in camera* on April 3, 1992. On April 7, 1992 the District Court issued the order appealed from in this case, holding that all six disputed documents were properly withheld under FOIA exemptions 1 and 5. Apr. 7 Order, *reprinted in* J.A. 302.

Both of the District Court's orders in this case recognized that, pursuant to the test enunciated in *Afshar v. Department of State*, 702 F.2d 1125 (D.C.Cir.1983), an agency can, under certain limited circumstances, waive the applicability of FOIA exemption 1 to information it has previously released to the public. The District Judge held, however, that the *Afshar* waiver criteria were not met in the instant case. According to the trial court, although Glaspie's congressional testimony concededly revealed certain facts contained in the disputed documents, the *context* in which the information appeared in the documents was significantly different. The District Judge therefore felt compelled to defer to State's judgment that disclosure of the documents would jeopardize national security.

## II.  DISCUSSION

■ This is an unusual FOIA case in that appellant does not contest the District Court's judgment that the disputed documents are exempt from disclosure under both exemptions 1 and 5. *See* Brief of Appellant at 7–8 nn. 2, 3; Reply Brief of Appellant at 1. The sole issue before us is whether Glaspie's public testimony concerning her meeting with Hussein operates as a waiver of these otherwise valid FOIA exemptions. Further, Public Citizen concedes that it cannot satisfy the test this court established in *Afshar* for waiver of FOIA exemption 1. *See* Brief of Appellant at 11; Reply Brief of Appellant at 1. Appellant instead attempts to argue that the instant case is distinguishable on its facts from our previous decisions addressing waivers of exemption 1. We are unpersuaded. The law of this circuit pro-

vides that an agency official does not waive FOIA exemption 1 by publicly discussing the general subject matter of documents which are otherwise properly exempt from disclosure under that exemption.[3]

■ This court established the criteria for waiver of exemption 1 in *Afshar v. Department of State*, a case involving in part the C.I.A. Director's statutory right to protect intelligence sources and methods. In *Afshar*, an Iranian-born American citizen submitted FOIA requests to State, the Department of Justice and the C.I.A. for all documents pertaining to him or his activities as editor of the *Iran Free Press*, a newspaper frequently critical of the former Shah of Iran. The agencies refused to release certain documents they claimed were exempt under FOIA exemptions 1, 3 and 5. Afshar argued that the exemptions had been waived because "information fitting the defendants' descriptions of the withheld information has already been released to the public." *Afshar*, 702 F.2d at 1129.

*Afshar* held that although an agency bears the burden of proving that a FOIA exemption applies to a given document, a plaintiff asserting that information has been previously disclosed bears the initial burden of pointing to specific information in the public domain that duplicates that being withheld. *Id.* at 1130. FOIA plaintiffs cannot simply show that similar information has been released, but must establish that a specific fact already has been placed in the public domain:

> [FOIA] bars the courts from prying loose from the government even the smallest bit of information that is properly classified.... In many cases, the very fact that a known datum appears in a certain context or with a certain frequency may itself be information that the government is entitled to withhold.

*Id.* at 1130.

The court noted that even if a fact has been the subject of media speculation, its official acknowledgment could damage national security. *Id.* Thus, *Afshar* squarely

---

**3.** Because we hold that the disputed documents are exempt from FOIA disclosure under exemption 1, we do not reach appellant's contentions that the State Department also waived exemption 5 by permitting Glaspie to testify before the congressional committees.

rejected the argument that statements in books written by former C.I.A. agents could be considered *official*. disclosures that had placed information in the public domain. The court also noted that the revelations in those books "provide[d] only the most general outline" of contacts between the C.I.A. and the Iranian intelligence agency, while the withheld documents "would give a far more precise idea of the extent to which the services relied upon each other." *Id.* at 1133.

Public Citizen attempts to distinguish *Afshar* by suggesting that case addressed only an attempt to force the Government to *confirm* information that private parties had placed in the public domain. *Afshar* itself plainly forecloses this argument. The plaintiffs in that case not only pointed to disclosures in books written by former C.I.A. agents, but also averred that documents released by the C.I.A., the State Department and the F.B.I. constituted waivers of exemption 1. *Id.* at 1132, 1134. We held in *Afshar*, however, that these government documents were either less specific than the documents withheld, or concerned information sufficiently different so as not to amount to a waiver. *Id.* at 1132–33, 1134–35.

The stringency of the *Afshar* test was made clear in *Fitzgibbon v. C.I.A.*, 911 F.2d 755 (D.C.Cir.1990), a case in which a historian sought documents relating to the disappearance of a Basque exile last seen in New York City. In *Fitzgibbon*, the F.B.I. and C.I.A. withheld over 500 documents, citing FOIA exemptions 1, 3 and 6. This court reversed the District Court's conclusion that the C.I.A. had waived exemption 3 as to information concerning the location of a C.I.A. station. The District Court reasoned that the agency had waived exemption 3 for information relating to the station's location after 1975 because in that year a congressional committee report revealed the station's location. We held, however, that the 1975 disclosure did not operate as a waiver of

exemption 3 as to information concerning the station's location in years before or after those discussed in the 1975 report. *Id.* at 765–66.[4]

Citing *Afshar*, the court in *Fitzgibbon* outlined the criteria for determining whether information requested has been "officially acknowledged":

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed.... Third, ... the information requested must already have been made public through an official and documented disclosure.

*Id.* at 765 (citing *Afshar*, 702 F.2d at 1133). Reversing the District Court, this court summarized its understanding of waiver: "[W]e have unequivocally recognized that the fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods and operations." *Id.* at 766.

A third case, decided before *Afshar* and cited in that decision, also controls our resolution of the instant case. This court held in *Military Audit Project v. Casey*, 656 F.2d 724 (D.C.Cir.1981), that the C.I.A. did not waive the applicability of FOIA exemption 1 to all classified information relating to a subject by voluntarily releasing some formerly classified information about that subject. *Military Audit Project* concerned an alleged C.I.A. plan to recover a wrecked Soviet nuclear submarine from the ocean floor using a high-tech secret underwater craft called the "Glomar Explorer." The Government had declassified some documents relating to the Glomar project for reasons unrelated to the FOIA case and some information had reached the press through other channels, but the C.I.A. refused to reveal further de-

---

4. Although *Fitzgibbon* concerns exemption 3 rather than exemption 1, this fact in no way affects its relevance to the instant appeal. In *Afshar* we considered simultaneously claims that exemptions 1 and 3 had been waived, making no attempt to separate our analyses of the two exemptions and no suggestion that there was any need to do so. In cases in which exemption 3 is

asserted in an effort to protect intelligence methods and sources, as it was in *Fitzgibbon* and *Afshar*, exemptions 1 and 3 have essentially identical aims: to preserve the Executive's freedom to refuse to disclose information that might compromise national security or foreign policy. In such cases, the *Afshar* criteria are equally applicable to both exemptions.

tails. The appellants in that case sought, among other information, documents relating to the financial arrangements between the Government and contractors known to have participated in the project, the names of other previously undisclosed contractors and the purpose of the project.

*Military Audit Project* noted that: "[A]ppellants launch the argument that because *some* information about the project ostensibly is now in the public domain, *nothing* about the project in which the appellants have expressed an interest can properly remain classified." *Id.* at 752 (emphasis in original). Based on this reasoning, the *Military Audit Project* appellants argued that the District Court's grant of summary judgment based solely on the agency's affidavits was improper because the agency's prior disclosures raised questions as to whether material in the withheld documents might now be in the public domain. We refused even this limited request, holding that we would defer to the agency's interpretation of the needs of national security and accept the validity of the affidavits. *Id.* at 753. We also noted that appellant's argument was based on the "perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding one," and that to effectively penalize an agency for voluntarily declassifying documents would "work mischief" by creating an incentive against disclosure. *Id.* at 753–54.

In this appeal, Public Citizen's chief argument is that the *Afshar* line of cases must be understood to address only FOIA plaintiffs' attempts to force the Government to confirm or deny the truth of information which other sources have already made available to the public. With this interpretation of our precedents as their starting point, appellants reason that the instant situation should be distinguished from our other exemption 1 waiver cases because here the State Department volunteered public statements through an official spokesperson, and appellants therefore seek not to confirm information leaked by others, but to hold the agency accountable for the fidelity of its public statements to its internal documents. Public Citizen stresses that it seeks only to prevent State from selectively revealing privileged information for its own advantage. In so arguing, appellant relies primarily on the law of waiver of attorney-client and attorney work product privileges established by our decision in *In re Sealed Case,* 676 F.2d 793 (D.C.Cir.1982). Appellant also suggests that Glaspie's testimony to the congressional committees concerning her meeting with Hussein was far more detailed than the disclosures we rejected as inadequate to accomplish waiver in *Afshar, Fitzgibbon,* and *Military Audit Project,* because Glaspie's testimony addressed only the single, relatively narrow subject of her meeting with Hussein.

Having carefully considered these arguments, we hold that appellant's position cannot be squared with the case law of this circuit. The plaintiffs in *Afshar, Fitzgibbon* and *Military Audit Project* all made open-ended requests for information, not requests for mere "confirmation" of specific material placed in the public domain by unofficial sources. Indeed, *Afshar* rejected waiver arguments that were based on information previously released by the very agencies named as defendants in that case. Our decisions make it clear that an agency will not be held to have waived exemption 1 absent a showing by a FOIA plaintiff that the *specific information at issue* has been officially disclosed. Further, Public Citizen's argument that Glaspie's disclosures were more detailed than those at issue in our prior cases is to no avail as appellant concedes that it cannot meet *Afshar*'s requirement that it show that Glaspie's testimony was "as specific as" the documents it seeks in this case, or that her testimony "matches" the information contained in the documents. *See Fitzgibbon,* 911 F.2d at 765. We recognize that this is a high hurdle for a FOIA plaintiff to clear, but the Government's vital interest in information relating to national security and foreign affairs dictates that it must be. Even if our precedents did not command the result we reach today, we would be unwilling to fashion a rule that would require an agency to release all related materials any time it elected to give the public information about a classified matter. To do so would give the Government a strong disincentive ever to provide its citizenry with briefings of any kind on sensitive topics.

Finally, Public Citizen's contentions that it is unfair, or not in keeping with FOIA's intent, to permit State to make self-serving partial disclosures of classified information are properly addressed to Congress, not to this court. We are bound by the law of this circuit, and are convinced that in this case the District Court reached the result compelled by *Afshar*. If the legislature believes that this outcome constitutes an abuse of the agency's power to withhold documents under exemption 1, it can so indicate by amending FOIA.

### III. CONCLUSION

The law of this circuit clearly provides that an agency does not waive FOIA exemption 1 by permitting an agency official publicly to discuss material otherwise properly exempt from FOIA disclosure by that provision. The test for waiver of exemption 1 established in *Afshar v. Department of State* is fully applicable to the instant case, and appellant candidly concedes that it cannot satisfy *Afshar*. Accordingly, the judgment of the District Court is

*Affirmed.*