Moreover, the record evidence plainly establishes that there is a connection between these plaintiffs and a possible violation of federal law (see, e.g. , FCA Civil Complaint, Compl. Ex. 2, ECF No. 1-1, at 4-31), which is all that is required to support DOJ's assertion that the law-enforcement-purposes requirement has been met. See Campbell v. U.S. Dep't of Justice , 164 F.3d 20, 32 (D.C. Cir. 1998) (explaining that a defendant invoking Exemption 7 need only "establish a rational nexus between the investigation and one of the agency's law enforcement duties, and a connection between an individual or incident and a possible security risk or violation of federal law" (internal quotation marks and citations omitted) ); see also *408 Jefferson v. U.S. Dep't of Justice , 284 F.3d 172, 176-77 (D.C. Cir. 2002) (stating that, when assessing whether or not this threshold requirement has been met, the court's "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding" (internal quotation marks and citations omitted) ). Therefore, this Court easily concludes that the threshold Exemption 7 requirement that the recording and transcript qualify as law enforcement records is satisfied.
The second aspect of the Exemption 7(A) inquiry-whether disclosure of the records Plaintiffs seek could reasonably be expected to interfere with DOJ's investigation in a manner that implicates subdivision (A)-requires a two-step analysis: a court considers, first, whether a law enforcement proceeding is pending or prospective, and second, whether disclosure of the requested records and information therein could reasonably be expected to cause some articulable harm to that proceeding. See Cudzich v. U.S. Immigration & Naturalization Servs. , 886 F.Supp. 101, 106 (D.D.C. 1995). Each of these considerations supports the applicability of the exemption under the circumstances presented here.
First, Defendant has provided (ex parte and in camera ) the declarations of DOJ and FBI officials to support the representation that there is an "ongoing criminal investigation by DOJ and the FBI into Plaintiffs' activities and the potential criminal activities of third parties." (Def.'s Mem. at 9; see, e.g. , Decl. of Jonathan T. Baum ("Baum Decl."); Decl. of David L. Bowdich ("Bowdich Decl.").) Such evidence is sufficient to establish the pendency of a pertinent law enforcement proceeding, see Adair v. Mine Safety & Health Admin. , No. 08-cv-1573, 2009 WL 9070947, at *6 (D.D.C. Sept. 23, 2009), and, indeed, Plaintiffs do not appear to argue otherwise.
Second, with respect to the requirement that a defendant in a FOIA case establish how the requested documents would interfere with the pending criminal enforcement proceeding, see Cudzich , 886 F.Supp. at 106, it is well established that an agency may withhold records to "prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 762 (D.C. Cir. 2000) ; see also F.B.I. v. Abramson , 456 U.S. 615, 621, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) (explaining that Exemption (7)(A) operates "to prevent premature disclosure of investigatory materials which might be used in a law enforcement action"). Moreover, an "interference" or "articulable harm" to the government's case encompasses a wide variety of potential problems, including the risk that disclosure will reveal
(1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act, (12) attorney work product, (13) the methods of surveillance, [and] (14) subjects of surveillance.
Cudzich , 886 F.Supp. at 106 n.1 (alteration in original) (internal quotation marks and citation omitted).
*409 In the cross-motion for summary judgment that Defendant has submitted here, the government specifically states that disclosure of the audio recording and transcript of Plaintiffs' conversation "would prematurely: (a) reveal the nature, scope, focus, or direction of the investigation; (b) identify suspects and alert them about the investigations, which would allow them to elude detection or tamper with evidence; and (c) compromise evidence and sensitive law enforcement information." (Def.'s Mem. at 9.) The declarations upon which DOJ's motion rests likewise discuss the extent to which disclosure of the entire recording could interfere with ongoing law enforcement proceedings, and explain that there is a risk that evidence and witness tampering could occur and that the scope and direction of the investigation would be revealed. (See Baum Decl. ¶¶ 32-35; Bowdich Decl. ¶ 6.) In addition, although DOJ's motion invokes another FOIA exemption when it asserts the impropriety of disclosing the source's identity (see Def.'s Mem. at 10-12 (discussing Exemption 7(D) ) ), the government's affiants specifically address the harm and interference that revealing the source's identity would cause to the ongoing criminal investigation and process (see, e.g. , Kovakas Decl. ¶ 8, 11 (explaining that revealing the source's identity would lead to "possible harm to, or intimidation of," the source and other potential witnesses, which would impede their continued cooperation, "forever eliminate that source as a future means of obtaining information[,]" and ultimately "severely hamper law enforcement efforts to detect and apprehend" the suspects of their investigation) ).
This Court also finds no reason to question or doubt the representations that the government and its affiants have made regarding the potential risks and harm, and the only plausible argument that Plaintiffs make in this regard is their contention that, under the circumstances presented here, the records must not be all that sensitive because the government has previously released substantial portions of them to the public. (See Pls.' Opp'n at 2 ("[N]ow that 'the cat is out of the bag' about the recording, no legitimate government purpose will be served by DOJ continuing to withhold the recording from the public." (emphasis omitted) ).) This contention is unavailing as a matter of pure logic: the mere fact that the government has chosen to release some parts of a protected document-and bear the brunt of the harm that results-does not a fortiori mean that releasing the entire document would not be harmful. See Ctr. for Nat'l Sec. Studies , 331 F.3d at 930-31 (finding that "[t]he disclosure of a few pieces of information in no way lessens the government's argument that complete disclosure would ... have negative effects on the investigation"). What is more, this assertion also plainly contradicts Congress's clear intent with respect to the operation of the FOIA; that is, the government is unquestionably authorized to withhold portions of records at the same time that it is releasing other parts, see Abramson , 456 U.S. at 626, 102 S.Ct. 2054 (noting that "it is permissible for an agency to divide the record into parts that are exempt and parts that are not exempt, based on the kind of information contained in the respective parts"), and to insist, as Plaintiffs do here, that significant releases somehow bear on the question of the extent to which the redacted parts can properly be withheld is also manifestly inconsistent with the text of the FOIA statute, see 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").
*410 In sum, there is no dispute that the recording and its transcript were made for law enforcement purposes, and based on the record evidence that the government has presented, this Court finds that there is a reasonable likelihood that disclosure of the entire recording and transcript would interfere with the ongoing criminal investigation into Plaintiffs' activities and the potential criminal liabilities of third parties in a harmful manner. As a result, the Court agrees with Defendant that Exemption 7(A) applies and that the government has the authority to withhold the entire audio recording and the corresponding transcript on this basis.
B. The Government Has Waived Its Right To Withhold The Portions Of The Written Transcript That Mirror The Excerpts It Previously Disclosed, But It May Continue To Withhold The Remainder Of The Transcript And The Entire Audio Recording
It is well settled that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." Cottone v. Reno , 193 F.3d 550, 554 (D.C. Cir. 1999) ; see also id. ("[T]he logic of FOIA mandates that where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes." (internal quotation marks and citation omitted) ). Of course, it is also well established that this public-domain doctrine is not without limits. A party who is seeking disclosure of previously released information is entitled to "receive no more than what is publicly available[,]" id. at 555, and thus "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld[,]" Afshar v. U.S. Dep't of State , 702 F.2d 1125, 1130 (D.C. Cir. 1983). In other words, "[f]or the public domain doctrine to apply, the specific information sought must have already been disclosed and preserved in a permanent public record." Students Against Genocide v. U.S. Dep't of State , 257 F.3d 828, 836 (D.C. Cir. 2001) (internal quotation marks and citation omitted); see also Wolf v. C.I.A. , 473 F.3d 370, 378 (D.C. Cir. 2007) (noting that "[p]rior disclosure of similar information does not suffice" (emphasis added) ).
Based on these established principles, this Court concludes that DOJ must release the portions of the written transcript that duplicate the excerpts that the government previously disclosed as part of the FCA complaint and press release. DOJ does not dispute that quotes from the written transcript of the audio recording-a record that Plaintiffs have requested in the instant FOIA action-appeared in the complaint the government filed in a civil FCA case on September 8, 2014. (See Def.'s Resp. to Pls.' Stmt. of Material Facts at 3; see also FCA Civil Complaint at 4-31; DOJ Press Release, Compl. Ex. 3, ECF No. 1-1, at 32-34.) And, indeed, that complaint, which was publicly disclosed, reproduced excerpts from the written transcript verbatim ; therefore, it is clear that those specific excerpts do in fact exist in the public domain. See Cottone , 193 F.3d at 554 (noting that court documents become part of the public domain and collecting cases); In re Nat'l Broad. Co. , 653 F.2d 609, 614 (D.C. Cir. 1981) ("[T]he general rule is that a trial is a public event, and what transpires in the court room is public property." (brackets omitted) (internal quotation marks omitted) ). Given this finding, this Court concludes that DOJ has waived its right to withhold these portions of the written transcript in the context of this FOIA dispute and must now release the portions of the transcript that duplicate exactly the information quoted in the *411 FCA complaint and press release. See, e.g. , Judicial Watch, Inc. v. U.S. Dep't of Def. , 963 F.Supp.2d 6, 15 (D.D.C. 2013) (recognizing the "simple rule that the government must release information that has been 'disclosed and preserved in a permanent public record' " (quoting Students Against Genocide , 257 F.3d at 836 ) ); Cottone , 193 F.3d at 557 (remanding the case "with instructions to compel the FBI to release those tapes" that are in the public domain); cf. Fitzgibbon v. C.I.A. , 911 F.2d 755, 765 (D.C. Cir. 1990) (explaining that the disclosure of public-domain information "may be compelled even over an agency's otherwise valid exemption claim").[5]
Plaintiffs are wrong to insist that the government's disclosure of some, but not all, of the transcript warrants a court order compelling the release of all of that document. (See Pls.' Mem at 12, 13 (arguing that it would be "extremely damaging and grossly unfair" if DOJ is permitted to disclose only the publicly available portions that cast a "negative" light upon Plaintiffs, and can withhold the non-public remaining portions that include "exculpatory and other contextual information").) This argument seems to be in the nature of a Brady concern, see Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but this is a FOIA case, and in this context it is clear beyond cavil that, "as a simple factual matter, publication of part of a document does not put the rest into the public domain[,]" Ancient Coin Collectors Guild , 641 F.3d at 510.[6] "And this is as it should be; for while the logic of FOIA postulates that an exemption can serve no purpose once information-including sensitive law-enforcement intelligence-becomes public," a court must assure itself that "the information sought is truly public and that the requester [will] receive no more than what is publicly available before [it] find[s] a waiver." Cottone , 193 F.3d at 555 (internal quotation marks omitted). Plaintiffs have not shown that the government has released from the transcript of the audio recording any publicly available information other than the excerpts quoted in the FCA complaint and press release. And nowhere in the FOIA statute or in related case law is the government required to produce otherwise-exempted information on the ground that withholding it would allegedly result in unfairness or disadvantage to the requesting party. See Pub. Citizen v. U.S. Dep't of State , 11 F.3d 198, 204 (D.C. Cir. 1993) (rejecting the argument that "it is unfair" to "permit [an *412 agency] to make self-serving partial disclosures" in the FOIA context and noting that those contentions "are properly addressed to Congress, not to [the] court"); Williams & Connolly v. S.E.C. , 662 F.3d 1240, 1245 (D.C. Cir. 2011) (observing that, for FOIA purposes, "what harm the requester might suffer from not getting the information" is irrelevant). Accordingly, the non-public portions of the transcript remain exempt from disclosure and can be properly withheld under Exemption 7(A). See supra Part III.A.
The same is true for the entirety of the audio recording. Under binding precedent, written transcripts of recordings do not contain information that is identical to the audio recorded version. See New York Times Co. v. NASA , 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc). No less an authority than the D.C. Circuit has recognized that "[t]he information recorded through the capture of a person's voice is distinct and in addition to the information contained in the words themselves[,]" id. at 1006, and thus, the audio format of a recorded conversation inherently conveys new information not otherwise found in the transcript of a recording alone, see id. at 1005. As a result, the D.C. Circuit has held that, although information the government possesses in both written and audible form is "equally covered by the general norm of disclosure [under the FOIA], and equally subject to the same specific exemptions therefrom[,]" id. at 1005, a court's analysis of whether "the lexical and non-lexical aspects of a file" are exempt will not always be identical because each component may very well "convey different information" for FOIA purposes, id.
So it is here. Although the transcript excerpts that have been publicly quoted contain words that are identical to the words spoken in the audio version of those same excerpts, DOJ asserts that the voice inflection in the audio version reveals additional information; specifically, the identity of the individual source who created the recording. (See Def.'s Mem. at 12 (claiming that disclosure of the "source's voice and/or its statements" would likely "expos[e] [its] identity").) This information is entitled to be withheld under Exemption 7(A) for the reasons explained above, see supra Part III.A, and no part of the audio version of the recorded conversation has ever been publicly disclosed, which means that the government has not waived its right to continue to withhold the information that the audio recording conveys pursuant to Exemption 7(A). Cf. Davis v. U.S. Dep't of Justice , 968 F.2d 1276, 1280 (D.C. Cir. 1992) (holding that the agency must "release only those portions of the tapes that [the plaintiff] can show, through newspaper accounts or other permanent records, were played in the courtroom " (second emphasis added) ). Put another way, this Court concludes that the additional, distinct information contained in the audio format of the recorded July 26th conversation does not reside in the public domain, and thus, despite the release of corresponding written transcript excerpts, the entire audio recording remains exempt from disclosure.
IV. CONCLUSION
It is clear on the instant record that DOJ has provided sufficiently detailed explanations to justify the withholding of information in the disputed records pursuant to FOIA Exemption 7(A). In light of the government's affidavits, which are entitled to be afforded substantial weight, it is both logical and plausible that the disclosure of the audio recording and the entire written transcript could interfere with the ongoing criminal investigation and, therefore, may be withheld under FOIA Exemption 7(A).
*413 However, DOJ has waived its right to withhold the portion of the transcript that it has already placed into the public domain via the FCA complaint and press release. Accordingly, and as set forth in the accompanying order, both parties' motions for summary judgment will be GRANTED IN PART and DENIED IN PART , and this Court will order DOJ to release in response to Plaintiffs' FOIA request those limited portions of the written transcript that duplicate verbatim the quoted information in the FCA complaint and press release.

The fact that Plaintiffs already have access to the identical information that must be released (through the FCA complaint itself) is of no moment. DOJ argues that "[g]iven their possession of the civil FCA Complaint and the corresponding press release, Plaintiffs already have the only information subject to waiver" (Def.'s Mem. in Opp'n to Pls.' Mot. ("Def.'s Opp'n"), ECF No. 15, at 8), and that may, in fact, be so. But that does not relieve the agency of its obligation under the FOIA to release non-exempt material responsive to Plaintiffs' request. In Niagara Mohawk Power Corp. v. U.S. Department of Energy , 169 F.3d 16 (D.C. Cir. 1999), the D.C. Circuit specifically addressed this apparent redundancy, see id. at 19 (asking, "if the information is publicly available, one wonders, why is [the plaintiff] burning up counsel fees to obtain it under FOIA?"), and it concluded that "the logic of FOIA compels the result: if identical information is truly public," then the agency record is not exempt and must be disclosed, id. See generally U.S. Dep't of Justice v. Tax Analysts , 492 U.S. 136, 153, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (explaining that "Congress surely did not envision agencies satisfying their disclosure obligations under the FOIA simply by" directing the requesters to a publicly available version).

Notably, as the government correctly points out (see Def.'s Opp'n at 3), the "FOIA is not a substitute for discovery in criminal cases" or other civil suits against Plaintiffs, Roth v. U.S. Dep't of Justice , 642 F.3d 1161, 1177 (D.C. Cir. 2011).