FILED
United States Court of Appeals
Tenth Circuit

**January 11, 2011**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

PRISON LEGAL NEWS,

        Plaintiff - Appellant,

v.

EXECUTIVE OFFICE FOR UNITED STATES
ATTORNEYS,

        Defendant - Appellee.
_____

60 MINUTES, THE ASSOCIATED PRESS,
WESTWORD, THE AMERICAN SOCIETY OF
NEWS EDITORS, THE ASSOCIATION OF
CAPITOL REPORTERS AND EDITORS, THE
SOCIETY OF PROFESSIONAL
JOURNALISTS, AND THE AMERICAN
CIVIL LIBERTIES UNION OF COLORADO,

        Amici Curiae.

No. 09-1511

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:08-CV-01055-MSK-KLM)**

_____

Gail K. Johnson, Johnson & Brennan, PLLC, Boulder, Colorado, for Appellant.

Jonathan H. Levy, Appellate Attorney, Civil Division (Tony West, Assistant
Attorney General, David M. Gaouette, United States Attorney, and Douglas N.
Letter, Appellate Attorney, Civil Division, with him on the brief), Department of
Justice, Washington, D.C., for Appellee.

Mark G. Walta, Walta, Gehring, Harms & Dingle LLC, Denver, Colorado, and Scott L. Shuchart, Jerome N. Frank Legal Services Organization, Yale Law School, New Haven, Connecticut, on the brief for Amici Curiae.

---

Before **MURPHY**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I.     Introduction

Prison Legal News ("PLN") appeals the partial grant of summary judgment to the Executive Office for United States Attorneys ("EOUSA") exempting from mandatory disclosure under the Freedom of Information Act ("FOIA") video depicting the aftermath of a brutal prison murder and autopsy photographs of the victim.  Exercising jurisdiction under 28 U.S.C. § 1291, this court **DISMISSES AS MOOT** the portion of the appeal pertaining to records that have now been released by EOUSA, and **AFFIRMS** the district court's order as to the remaining portions of the withheld records because the disclosure of the death-scene images in this case "could reasonably be expected to constitute an unwarranted invasion of personal privacy" of the victim's family.  5 U.S.C. § 552(b)(7)(C).

## II.     Background

In October 1999, William Sablan and Rudy Sablan, two prisoners at the United States Penitentiary in Florence, Colorado, murdered their cellmate, Joey

-2-

Jesus Estrella. Bureau of Prisons ("BOP") personnel filmed the aftermath of Estrella's death. The first portion of the video depicts the interior of the shared cell and the Sablans' conduct inside the cell, including the mutilation of Estrella's body. The audio of the first portion contains both the Sablans' voices and prison officials' voices. The second portion of the video depicts BOP personnel extracting the Sablans from the cell and does not contain any images of Estrella's body. BOP personnel also took still autopsy photographs of Estrella's body.

The Sablans were tried separately on first degree murder charges and the United States sought the death penalty in both cases. At each trial, the video, with audio, and autopsy photographs of Estrella's body were introduced as evidence and shown in open court to the jury and to the public audience. The exhibits were not sealed. Both of the Sablans were convicted and in each case a sentence of life in prison was imposed. At the completion of trial, the photographs and video were returned to the United States Attorneys Office pursuant to a standard order regarding the custody of exhibits.

PLN is an organization that publishes a legal journal concerning prisoners' rights issues. PLN filed a request under FOIA for the videotape and autopsy photographs introduced as evidence at Rudy Sablan's trial. EOUSA denied the FOIA request in full and the Department of Justice denied PLN's subsequent administrative appeal. Thereafter, PLN filed a complaint in district court alleging EOUSA's withholding of the requested records under FOIA was improper.

The parties filed cross-motions for summary judgment. EOUSA argued the autopsy photographs and video taken after Estrella's death were properly withheld under FOIA Exemptions 6 and 7(C) based on the privacy interests of Estrella's family. The district court granted in part and denied in part each party's motion, ordering the release of the second portion of the video plus the audio of BOP officials' voices in the first portion of the video.[1]

Both parties filed notices of appeal, but EOUSA subsequently voluntarily dismissed its appeal. In conjunction with the dismissal, EOUSA released the second portion of the video, including the accompanying audio, and the audio track only of the first portion with four of the Sablans' statements deleted.[2] At oral argument, the parties agreed EOUSA had released more than the district court order required.[3] The materials EOUSA continues to withhold are now

---

[1] As to the second portion of the video, the district court further ordered images of the Sablans' genitalia to be obscured. On appeal, PLN does not challenge that aspect of the order.

[2] PLN and EOUSA have differing interpretations of the district court's order. PLN views the district court's order as not requiring EOUSA to release the audio track accompanying the second portion of the video and therefore appeals the denial of the audio track. EOUSA interpreted the district court's order to require release of the audio accompanying the second portion of the video. Because EOUSA has now released that portion of the audio, we need not decide the issue.

[3] In addition to the audio track accompanying the second portion of the video, about which the parties dispute whether the order required release, EOUSA also released audio from the first portion that the parties agree was not required to be released by the district court's order as it went beyond the statements of the
(continued...)

limited to the first portion of the video, four redactions of the audio accompanying the first portion of the video, and the autopsy photographs. PLN's appeal as to all other materials, which have now been released, is moot. *See Anderson v. U.S. Dep't of Health and Human Servs.*, 3 F.3d 1383, 1384 (10th Cir. 1993) (noting that once requested records are released, FOIA claims as to those records are moot).

## III. Discussion

### A. Standard of Review

When the underlying facts of a FOIA case are undisputed and a district court has granted summary judgment in favor of a government agency, we review the district court's legal conclusion that the requested records are exempt from disclosure de novo, applying the same standard as the district court. *Herrick v. Garvey*, 298 F.3d 1184, 1190 (10th Cir. 2002). As part of this review, this court has conducted an in camera inspection of the requested records.

### B. FOIA Overview

Congress enacted FOIA to "open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (quotation omitted). To promote government accountability, "disclosure, not secrecy, is the dominant objective of the Act." *Id.* Recognizing, however, certain instances in

---

[3](...continued)
BOP officials.

which disclosure would harm legitimate interests, Congress exempted from FOIA's disclosure mandate nine categories of records. *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1225-26 (10th Cir. 2007); 5 U.S.C. § 552(b). The government bears the burden of demonstrating the requested records fall within one of FOIA's enumerated exemptions, which we construe narrowly in favor of disclosure. *Trentadue*, 501 F.3d at 1226.

Relevant here, Exemption 7(C)[4] allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). We therefore first determine whether there is a personal privacy interest at stake, and, if so, balance the privacy interests against the public interest in disclosure. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989).

---

[4]The government does not rely on Exemption 6 in this appeal. The balancing under Exemption 7(C) is more protective of privacy interests than under Exemption 6, which applies to personnel, medical, and similar records rather than law enforcement records. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004); *see* 5 U.S.C. §§ 552(b)(6), (b)(7)(C). Because there is no dispute the records at issue here constitute law enforcement records, and because Exemption 7(C) is broader than Exemption 6, an Exemption 6 analysis is, in any event, unnecessary.

## C. Autopsy Photographs and Video

We consider the autopsy photographs and the images from the first portion of the video together. We agree with the district court that the same considerations apply to both sets of images, and the parties have briefed the issues as such.

The parties agree that the relevant privacy interests are the interests of Estrella's family.[5] The Supreme Court recently considered a privacy claim under FOIA concerning photographs of the body of Vincent Foster, Jr., deputy counsel to President Clinton, at the scene of his death. *Favish*, 541 U.S. at 161. Tracing the types of personal privacy interests protected under FOIA, the Court held that Exemption 7(C) recognizes "family members' right to personal privacy with respect to their close relative's death-scene images." *Id.* at 170.

EOUSA has identified members of Estrella's family whose interests are at stake. Moreover, based on this court's in camera review of the autopsy photographs and the first portion of the video at issue in this appeal, the records unquestionably reflect death-scene images. The photographs depict close-up views of the injuries to Estrella's body and the first portion of the video prominently features Estrella's body on the floor of the prison cell. If anything, the privacy interest in these images is higher than the privacy interest in the

---

[5]The government has not argued that either Estrella's own privacy interests or the Sablans' privacy interests are implicated.

photographs at issue in *Favish*. The photographs in *Favish* depicted the victim of an apparent suicide, *see id.* at 161, but the images did not involve grotesque and degrading depiction of corpse mutilation as do the images at issue here. Additionally, the images in *Favish* were all still photographs, whereas the video at issue here depicts corpse mutilation as it occurs. The privacy interest of the victim's family in images of this nature is high.

PLN argues, however, that in the circumstances of this case, Estrella's family has no privacy interest. PLN first asserts that because Estrella was a prisoner and the images were taken in a prison cell, Estrella himself had no expectation of privacy and his family likewise can have none. Second, PLN contends that the use of the photographs and video at the Sablans' trial, combined with the family's failure to object to the introduction of the evidence in open court, effectively constituted a waiver of the privacy interests at stake. Finally, PLN urges this court to require an evidentiary showing that Estrella's family objects to the release of these images or otherwise will be harmed.

Any diminishment of Estrella's expectation of privacy as a result of his status as a prisoner does not bear on his family's privacy interest in not having gruesome images of his body publicly disseminated. As the Supreme Court stated in *Favish*, family members have a right to personal privacy "to secure their own refuge from a sensation-seeking culture for their own peace of mind and tranquility, not for the sake of the deceased." *Id.* at 166. Accordingly, contrary

-8-

to PLN's contention that any privacy interest of Estrella's family is derivative of Estrella's own privacy interest, family members' privacy interests under FOIA are independent interests. Estrella's status as a prisoner only has the potential to affect his own, and not his family's, privacy interests.

Estrella's family did not waive their privacy interests in the video and photographs as a result of the government's use of these materials at the Sablans' trials. The government cannot waive individuals' privacy interests under FOIA. *See Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 364 & n.12 (5th Cir. 2001) (holding the government's prior disclosure of requested information could not waive individual's privacy interests under Exemption 6 and collecting cases involving Exemption 7(C)). As such, neither the government's conduct in introducing the records nor its failure to have them admitted under seal is relevant to a waiver analysis.

The family's failure to object at the time of trial is also not sufficient to waive their own privacy interests under FOIA. An individual can waive his privacy interests under FOIA when he affirmatively places information of a private nature into the public realm. For example, when Ross Perot made public statements concerning his offer to assist government agencies with certain law enforcement matters, he waived any privacy interest he had in his name appearing on records concerning those matters. *Nation Magazine v. U.S. Customs Serv.*, 71

F.3d 885, 896 (D.C. Cir. 1995). In contrast, Estrella's family members did not take any affirmative actions to place the images in the public domain.

That the video and photographs were, at the time of the trials, displayed publicly, may impact the family's expectation of privacy in those materials but does not negate it. In *Reporters Committee*, the Supreme Court held that even though criminal conviction information was publicly available in individual court records, individuals still maintained a privacy interest in compilations of such information that would otherwise be difficult to assemble. 489 U.S. at 762-63. As the Court explained, "the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Id.* at 770 (quotations omitted). *Reporters Committee* thus requires an examination whether, as a practical matter, the extent of prior public disclosure has eliminated any expectation in privacy.

Here, the images are no longer available to the public; they were displayed only twice (once at each Sablan trial); only those physically present in the courtroom were able to view the images; and the images were never reproduced for public consumption beyond those trials. Although descriptive information about what the images contain may now be widely available, there is a distinct privacy interest in the images themselves. *See N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc) (recognizing the possibility of family's privacy interest in an audiotape of Space Shuttle Challenger astronauts' voices

-10-

just prior to their death even when transcript had already been publicly released), *remanded to* 782 F. Supp. 628 (D.D.C. 1991) (concluding the audiotape was exempt from disclosure on that basis). A member of the public would have to go to even greater lengths to see the images at issue in this case than to access the individual criminal records considered difficult to compile in *Reporters Committee*. Because of the limited nature of the prior public disclosure, we conclude Estrella's family retains a strong privacy interest in the images.

PLN's suggestions that the government was required to offer evidence of the family's objection and that the district court improperly made findings regarding the particular harm the family would suffer are incorrect. Exemption 7(C) covers records, the release of which "could reasonably be expected" to be an unwarranted invasion of privacy interests. 5 U.S.C. § 552(b)(7)(C). By its plain language, the test is an objective one and does not depend on the affected individuals' statements of objection or their personal views of the harm they might suffer. Likewise, the district court's observation that release of the records "could impede the family's ability to mourn Mr. Estrella's death in private and achieve emotional closure" is a proper statement of the general type of harm the Supreme Court recognized as implicating a legitimate privacy concern in *Favish*. *See* 541 U.S. at 168.

The determination of a privacy interest in the requested images does not end the Exemption 7(C) inquiry. The privacy interest at stake must be weighed

against the public interest in disclosure. Only if disclosure would constitute an "unwarranted" invasion of personal privacy can the records properly be withheld under Exemption 7(C). *See Reporters Comm.*, 489 U.S. at 771. The Supreme Court has defined the relevant public interest narrowly, and we therefore consider only the public's interest in obtaining information likely to contribute to its understanding of an agency's performance of its duties. *Id.* at 773.

Here, PLN argues the first portion of the video and the autopsy photographs will aid the public's understanding of agency activities in two ways. First, it contends the records will shed light on the BOP's performance of its duty to protect prisoners from violence perpetrated by other prisoners, including its obligations to provide adequate conditions of confinement and to prevent prisoners from falling under the influence of alcohol and other prohibited substances. Second, it argues that if the records are released, the public will better understand the prosecutor's decision to seek the death penalty against the Sablans, a decision significantly increasing the cost of prosecution.

While the BOP's protection of prisoners and the government's discretionary use of taxpayer money may be matters of public interest, there is nothing to suggest the records would add anything new to the public understanding. *See Forest Guardians v. FEMA*, 410 F.3d 1214, 1219 (10th Cir. 2005) (concluding release of requested records would not add to the public's knowledge about the agency's performance because the information was already

-12-

available). The video does not begin until Estrella has already been murdered and therefore does not depict any BOP conduct prior to Estrella's death. The second portion of the video depicting BOP personnel interacting with the Sablans to extract them from the cell has now been released in full. All statements made by BOP personnel in the first portion of the video have also been released in an audio file. At oral argument, the parties indicated that the length of time between the beginning of the video and the time BOP personnel extracted the Sablans from the cell is publicly known. Thus, all aspects of the video documenting BOP's response to the situation have been fully disclosed.

PLN's argument that the video may shed light on the conditions of confinement also rings hollow, as the size of the cell and conditions therein are public knowledge because they were discussed in detail at trial and reported in the press. The Sablans' state of intoxication, about which PLN also argues there is a public interest, has likewise been discussed in the media. To the extent their behavior in the video can add anything to the understanding of the Sablans' state of intoxication, that behavior can be observed in the second portion of the video, now released.

The same problem plagues PLN's argument that the public would benefit in understanding the prosecutor's decision to seek the death penalty in the Sablans' trials. All of the information PLN claims would shed light on the issue, including the heinous nature of the mutilation of Estrella's corpse, is already publicly

-13-

known.  The images at issue were viewed by members of the media at the Sablan trials, and the media widely reported on the contents of the video and photographs.

PLN argues that news media reporting on the video and photographs is not the same as the ability of the media to provide the video and photographic images to the public.  Nonetheless, to the extent any additional information can be gained by release of the actual images for replication and public dissemination, the public's interest in that incremental addition of information over what is already known is outweighed by the Estrella family's strong privacy interests in this case.  Thus, any additional disclosure would be an unwarranted invasion of the family's personal privacy.

## D.  Redacted Audio

EOUSA also withheld from PLN certain segments of the audio track accompanying the first portion of the video.  Those segments amount to four statements made by the Sablans.  PLN argues no portion of the audio track is exempt and the district court erred in ordering EOUSA to release only the portions of the audio containing statements made by BOP officials.

The district court, stating that access to records under FOIA was limited to records that shed light on governmental activity, concluded that only the statements of government officials fell within the ambit of FOIA's disclosure requirement.  FOIA's disclosure requirement, however, has no such limitation.

-14-

Rather, under FOIA, agencies are required to release any requested agency records *unless* they fall within one of the exemptions. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). The district court thus incorrectly permitted EOUSA to withhold portions of the audio without deciding whether those portions were exempt from disclosure.

This court may nonetheless affirm on any ground that is supported in the record and raised on appeal. *Pullman v. Chorney*, 712 F.2d 447, 449 (10th Cir. 1983). As the government represented at oral argument and verified by in camera examination, the redacted statements of the Sablans pertain to what they were doing to Estrella's body. The government made clear at oral argument that these statements were also withheld under Exemption 7(C) on the same grounds as the images discussed above.

For the same reasons that Estrella's family has an interest in not being subjected to the public display of gruesome images of their deceased relative, they also have a privacy interest in the voices of the perpetrators themselves describing the heinous acts in progress. Like the images, these audio recordings add little or nothing to the large amount of public knowledge about the crimes and the government's response to them. The Sablans' voices describing their actions are part and parcel of the images of corpse mutilation. Because the same considerations apply to these audio records as to the images, the statements were properly withheld under Exemption 7(C).

**E. The Public Domain Doctrine**

PLN urges us to hold that, under the public domain doctrine, even if the records here are exempt they must nonetheless be released because they were previously introduced at the Sablans' trials. The public domain doctrine, a doctrine applied by the D.C. Circuit, comes into play once a court has concluded that a record falls within an exemption to disclosure under FOIA. It allows a court, in certain circumstances, to disregard that otherwise applicable exemption based on a prior public release of the requested materials. *See Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).

PLN relies primarily on *Cottone v. Reno* for its argument that the public domain doctrine overrides the application of any FOIA exemption when records are introduced as unsealed exhibits at a public trial.[6] 193 F.3d at 550. In *Cottone*, the D.C. Circuit held that "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in

---

[6]Many of the other cases on which PLN relies for its argument that the public domain doctrine should apply here, including decisions of this court, are inapposite. Rather than concluding records are exempt but under the public domain doctrine must be released anyway, those cases recognize that in some circumstances the public availability of information renders the exemption inapplicable at the outset. *See, e.g., Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1236 (10th Cir. 2007) (concluding there was no privacy interest in certain readily available information and the records therefore did not fall within Exemption 7(C)); *Herrick v. Garvey*, 298 F.3d 1184, 1193-94 (10th Cir. 2002) (holding records did not qualify as exempt confidential commercial information under Exemption 4 because the information was not actually confidential); *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 952 (10th Cir. 1990) (same as *Herrick*). Thus, these cases do not provide support for PLN's position.

-16-

a permanent public record." *Id.* at 554. The justification for the D.C. Circuit's rule under FOIA's statutory framework, however, is critical to understanding when the doctrine applies. The D.C. Circuit explained that "the logic of FOIA mandates that where information requested is truly public, then enforcement of an exemption cannot fulfill its purposes." *Id.* at 554 (internal quotation and citation omitted).

In *Cottone*, the requester sought tape recordings of wiretapped conversations that had been introduced at a public trial. *Id.* at 552-53. Recordings obtained by wiretap may be withheld under FOIA Exemption 3, which protects records that must be withheld under another statutory provision—in *Cottone*, the Omnibus Crime Control and Safe Streets Act of 1968. *Id.* at 554. Once the tapes in *Cottone* were played at a public trial, the purpose of the Exemption 3 statute could no longer be fulfilled because the government had already revealed the intercepted information. *See id.* at 555. Importantly, there was no argument in *Cottone* that any additional interest attached to the tape recordings, which had already been disclosed and thus easily disseminated further.

By contrast, the purpose of Exemption 7(C) in this case remains intact despite the government's use of the records at a public trial. The nature of the family's strong privacy interest in the photographs, video, and accompanying audio is distinct from information about what those images and recordings

-17-

contain. The Sablans' conduct is already publicly known and written descriptions have been widely republished. Enforcement of Exemption 7(C) here would not protect any privacy interest that might exist merely in a description of the conduct. As discussed above, however, the actual images have been viewed by a limited number of individuals who were present in the courtroom at the time of the trials. Thus, enforcement of Exemption 7(C) can still protect the privacy interests of the family with respect to the images and recordings because they have not been disseminated. Aside from *Cottone*, every case cited by PLN in support of its reading of the public domain doctrine declines to apply the doctrine because of a failure of the plaintiff to demonstrate with specificity the information that is in the public domain. *See, e.g.*, *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992).

The public domain doctrine is limited and applies only when the applicable exemption can no longer serve its purpose. Given that the public domain doctrine appears nowhere in the statutory text of FOIA, only the failure of an express exemption to provide any protection of the interests involved could justify its application. Even if this court adopted the public domain doctrine, it would not defeat Exemption 7(C)'s applicability in this matter because the purposes of Exemption 7(C) can still be served.

Finally, we reject PLN's suggestion that admission of certain records at trial is different from other types of public disclosures under FOIA. Without

doubt, the public has some common law rights to court records and such rights protect important interests in public adjudications. *See United States v. McVeigh*, 119 F.3d 806, 811-12 (10th Cir. 1997); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Nonetheless, we have no occasion to decide whether the autopsy photographs and death-scene video were properly removed from the public record or whether those records should have been available for public copying.[7] The claim presented here is a claim brought under FOIA and, for the purposes of FOIA, the only relevant fact about the trial is the extent of disclosure.[8]

## IV. Conclusion

For the foregoing reasons, this court **DISMISSES AS MOOT** the portion of PLN's appeal that pertains to records already released and **AFFIRMS** the

---

[7]The same is true for PLN's claim, if such a claim can be made, under the First Amendment. *See United States v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1998).

[8]We likewise decline PLN's invitation to examine the United States Attorneys' policies on the public release of videos it uses at trial. To the extent PLN feels the policy is inconsistently applied, it is a matter to be taken up with the executive branch or with Congress.

judgment of the district court in all other respects.[9]  EOUSA's motion to strike the

amicus brief filed by media organizations is **DENIED**.

---

[9]EOUSA's motion to file the requested records under seal, having been previously provisionally granted, is now permanently **GRANTED**, but only to the extent of the unredacted full-length video, the unredacted audio track accompanying the videotape, the autopsy photographs, and the unredacted transcript of the audio track.  All other materials are to be maintained on the public docket.  This court orders that EOUSA confer with the clerk of this court to arrange for the permanent sealing of only the designated records and that PLN then confirm with the clerk that the proper records are unsealed.