FILED
United States Court of Appeals
Tenth Circuit

February 22, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WORLD PUBLISHING COMPANY,

      Plaintiff - Appellant,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, and its subordinate
bureau, United States Marshals
Service,

      Defendant - Appellee.

No. 11-5063

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:09-CV-00574-TCK-TLW)**

---

J. Schaad Titus of Titus, Hillis, Reynolds, Love, Dickman & McCalmon, Tulsa,
Oklahoma, for Plaintiff - Appellant.

Steve Frank, (Tony West, Assistant Attorney General, Thomas Scott Woodward,
United States Attorney, and Leonard Schaitman of Department of Justice, with
him on the brief), Washington, D.C., for Defendant - Appellee.

---

Before **KELLY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

      Plaintiff-Appellant, World Publishing Company, publisher of the Tulsa

World newspaper ("Tulsa World"), appeals from the district court's judgment in

favor of Defendant-Appellee, the United States Department of Justice ("DOJ" or "government"). Resolving various pretrial motions including cross-motions for summary judgment, the district court held that Tulsa World had standing, denied it discovery, and concluded that the United States Marshals Service ("USMS") properly withheld six booking photographs ("mug shots") requested by Tulsa World. World Pub. Co. v. U.S. Dep't of Justice, No. 09-CV-574-TCK-TLW, 2011 WL 1238383, at *18 (N.D. Okla. Mar. 28, 2011). Tulsa World requested the photos under the Freedom of Information Act ("FOIA"), and the government relied upon Exemption 7(C) to withhold them. On appeal, Tulsa World argues that the district court erred in granting the government's motion for summary judgment and denying it discovery so that it might better respond to that motion. Jurisdiction is proper pursuant to 28 U.S.C. § 1291 and we affirm.

Background

On August 26, 2008, Tulsa World sent a FOIA request to the USMS seeking the booking photos of six pretrial detainees. See 5 U.S.C. § 552; Aplt. App. 15-16. The USMS denied the FOIA request, citing Exemption 7(C). 5 U.S.C. § 552(b)(7)(C); Aplt. App. 17. Tulsa World appealed the decision, and the DOJ affirmed the denial. See Aplt. App. 99. Subsequently, Tulsa World brought this action against the DOJ and the USMS. Tulsa World timely appeals from the district court's judgment in favor of the government.

Discussion

Given undisputed facts, we review de novo the district court's legal conclusion that requested records are exempt from disclosure under the FOIA. Prison Legal News v. Exec. Office for the U.S. Attorneys, 628 F.3d 1243, 1247 (10th Cir. 2011). Congress enacted the FOIA to "open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (internal citations omitted). There are certain instances, however, when Congress has deemed disclosure inappropriate; these exceptions are covered by 5 U.S.C. § 552(b). The government bears the burden of demonstrating that the request falls into one of the enumerated exceptions, and we construe narrowly in favor of disclosure. See Prison Legal News, 628 F.3d at 1247.

A.      The Photos are Exempt from FOIA Disclosure Based on Exemption 7(C)

Exemption 7(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . ." 5 U.S.C. § 552(b)(7)(C). Thus, based on this statute, a three-part test has emerged to determine if information is covered by Exemption 7(C). A court must (1) determine if the information was gathered for a law enforcement purpose; (2) determine whether there is a personal privacy interest at stake; and if there is (3) balance the privacy interest against the public interest in disclosure. See Prison

- 3 -

Legal News, 628 F.3d at 1247-48; U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776 (1989).  Here, it is undisputed that the photos were taken for a "law enforcement purpose."  See World Pub. Co., 2011 WL 1238383, at *13.  Tulsa World challenges the district court's resolution of elements (2) and (3) of the above test.  These inquiries encompass the first three issues on appeal, and will be discussed in turn.

1.      Detainees Have Some Privacy Interest in Booking Photos

In Reporters Committee, the Supreme Court held that the 7(C) Exemption prevented disclosure of FBI "rap sheets"—or criminal history summaries.  489 U.S. at 780.  The Court determined that "[a]lthough much rap-sheet information is a matter of public record, the availability and dissemination of the actual rap sheet to the public is limited."  Id. at 753.  The Court rejected the argument that because the events summarized in rap sheets had been previously disclosed to the public, there was a diminished privacy interest in the rap sheet.  Id. at 762-63.  The Court also found that the pattern of authorized rap sheet disclosure was restricted to "the use of a particular person or group or class of persons", further supporting the notion that individuals have a privacy interest in their rap sheets.  Id. at 765 (internal quotations omitted).  It continued: "the fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information."  Id. at 770 (internal quotations omitted).  After balancing this privacy interest against the public's interest in

- 4 -

disclosure—step (3) in the test—the Court held that Exemption 7(C) applied to FBI rap sheets, despite the fact that the individuals involved had been convicted.

In Prison Legal News, this court applied Exemption 7(C) to autopsy photographs and a video taken of the aftermath of a prison murder, notwithstanding that these items were shown to a jury in open court and to the public audience present at trial. The court concluded that the privacy interests contained in Exemption 7(C) remained intact, rejecting the application of the "public domain doctrine." 628 F.3d at 1252-53.

Likewise, a federal district court has held that the subject of a booking photo has a protectable privacy interest under the FOIA. Times Picayune Pub. Corp. v. U.S. Dep't of Justice, 37 F. Supp. 2d 472, 477 (E.D. La. 1999). There, the subject was Edward J. DeBartolo, a well-known businessman and owner of the San Francisco Forty-Niners. The court stated:

> Contrary to the assertion of the Times Picayune, Mr. Debartolo's mug shot is more than just another photograph of a person. Mug shots in general are *notorious for their visual association of the person with criminal activity*. Whether because of the unpleasant circumstances of the event or because of the equipment used, mug shots generally disclose unflattering facial expressions. They include front and profile shots, a backdrop with lines showing height, and, arguably most humiliating of all, a sign under the accused's face with a unique Marshals Service criminal identification number.

Id. (emphasis added). The court continued, "[a]s in the cliché, a picture is worth a thousand words. For that reason, a mug shot's stigmatizing effect can last well beyond the actual criminal proceedings. . . . A mug shot preserves, in its unique

and visually powerful way, the subject individual's brush with the law *for posterity*." Id. (emphasis added). Following the Supreme Court's reasoning in Reporters Committee, the court reiterated that a booking photo is intended for use only by a specific and small group of people—further reason for a court to protect an individual's privacy interest in that photo. Id. at 477-78.

    a.    Circuit Split

The Sixth Circuit held, to the contrary, that disclosure of a booking photo "in an ongoing criminal proceeding, in which the names of the defendants have already been divulged and in which the defendants themselves have already appeared in open court" does not implicate privacy rights. Detroit Free Press, Inc. v. Dep't of Justice, 73 F.3d 93, 97 (6th Cir. 1996). The court did not address whether disclosure might invade privacy given "dismissed charges, acquittals, or completed criminal proceedings." Id. The court distinguished exempt rap sheets (Reporters Committee) by noting that they were not relevant to any ongoing prosecution at the time of requested disclosure and that

> the very nature of rap sheets demands that they be accorded a greater degree of privacy and protection from public scrutiny. Such documents are not single pieces of information but, rather, compilations of many facts that may not otherwise be readily available from a single source. Thus, rap sheets both disclose information that extends beyond a particular, ongoing proceeding and recreate information that, under other circumstances, may have been lost or forgotten.

73 F.3d at 97. The Sixth Circuit is the only circuit to conclude that there is no privacy interest in a booking photo given ongoing and public criminal

- 6 -

proceedings. The court was undeterred by the negative impression a booking photo conveys: "the personal privacy of an individual is not necessarily invaded simply because that person suffers ridicule or embarrassment from the disclosure of information in the possession of government agencies." Id. at 97.

Conversely, the Eleventh Circuit held that booking photos were exempt from disclosure pursuant to Exception 7(C). In that case, a freelance reporter submitted a FOIA request for the booking photo of an individual who pleaded guilty to securities fraud. Karantsalis v. U.S. Dep't of Justice, 635 F.3d 497, 499 (11th Cir. 2011) (per curiam), cert. denied, 2012 WL 171139 (U.S. Jan. 23, 2012). Addressing the personal privacy interest—the second element in deciding the applicability of the Section 7(C) exemption—the court stated that "mug shots carry a clear implication of criminal activity." Id. at 503 (internal quotations omitted). The court continued:

> a booking photograph is a unique and powerful type of photograph that raises personal privacy interests distinct from normal photographs. A booking photograph is a vivid symbol of criminal accusation, which, when released to the public, intimates, and is often equated with, guilt. Further, a booking photograph captures the subject in the vulnerable and embarrassing moments immediately after being accused, taken into custody, and deprived of most liberties.

Id.; see also United States v. Romero-Rojo, 67 Fed. App'x 570, 572 (10th Cir. 2003) (unpublished) (holding that in some instances the admission of a booking photo at trial can be unduly prejudicial under Fed. R. Evid. 404(b) because "mugshots carry a clear implication of criminal activity that breaches the rule

against admitting evidence of the defendant's bad character or previous brushes with the law."). Moreover, the Eleventh Circuit explained that federal booking photos are not generally available to the public—a fact that supports a personal privacy interest in the photographs. Karantsalis, 635 F.3d at 503 (citing Reporters Comm., 489 U.S. at 764). Despite the law in the Sixth Circuit after Detroit Free Press, the court noted that "Plaintiff's request for . . . [the] booking photographs . . . is not subject to this policy exemption [as construed by the Sixth Circuit] because this case falls within the jurisdiction of the Eleventh Circuit." Karantsalis, 635 F.3d at 501.

Tulsa World argues that booking photos are generally available from state law enforcement agencies. Furthermore, they argue that the DOJ's policies perpetuate a "self-fulfilling prophecy"—"DOJ establishes a rule that Mug Shots shall not be disclosed except for 'law enforcement purposes' and then uses its own rule to 'determine' conclusively that Mug Shots are not generally available . . . ." Aplt. Br. 12. Tulsa World reiterates that the DOJ's position that booking photographs are not generally available is simply not correct in the Sixth Circuit or most state jurisdictions. Id.; Aplt. Reply Br. 12-15. We are not persuaded by the practice of other jurisdictions.

To the contrary, the actions of state law enforcement agencies in disclosing booking photos does not mean that *USMS booking photos* are generally available to the public outside of the Sixth Circuit. Persons arrested on federal charges

outside of the Sixth Circuit maintain some expectation of privacy in their booking photos. Furthermore, this court is not bound by the Sixth Circuit's decision in Detroit Free Press, though it should be carefully considered. See Karantsalis, 635 F.3d at 501. The two federal courts to address this issue since Detroit Free Press rejected its holding that there is no privacy interest in USMS booking photos, and held that Exemption 7(C) prevents disclosure in circumstances similar or identical to this case. See Karantsalis, 635 F.3d at 497; Times Picayune, 37 F. Supp. 2d at 482.

Additionally, Tulsa World goes to great lengths to draw a distinction between booking photographs and the rap sheets in Reporters Committee. Aplt. Reply Br. 3-14. First, while rap sheets are protected statutorily, 28 U.S.C. § 534(a)(4) & (b), booking photographs are protected by DOJ policies. Aplt. Reply Br. 5-7. We do not see this distinction as helpful to Tulsa World because, in both cases, the government has expressed a desire to prevent public disclosure of the information. While we acknowledge other subtle differences, we also draw a comparison between the sensitive nature of the subject matter in a rap sheet, and the vivid and personal portrayal of a person's likeness in a booking photograph. Further, all of the information in a rap sheet is available to the public, though the rap sheet makes it easily available in one place. Except in limited circumstances, such as the attempt to capture a fugitive, a USMS booking photograph simply is not available to the public. While Tulsa World argues that the privacy interest in

a booking photograph is diminished because "there has been an explosion of camera phones and video which allow persons to be photographed . . . at any time," id. at 9, this argument cuts against its position. Given easy access to photographs and photography, surely there is little difficulty in finding another publishable photograph of a subject. Finally, even if the USMS does release booking photos in limited circumstances, such as when attempting to apprehend a fugitive, "the purpose of Exemption 7(C) . . . remains intact" and applying the exemption is appropriate, just as when certain video and photographs were disclosed during trial in Prison Legal News. 628 F.3d at 1252-53.

## 2. The Privacy Interest in the Photos Outweighs the Public Interest in Disclosure

The final element of the test requires the court to balance the privacy interest in the booking photo against the public interest served by disclosure. In Reporters Committee, the Supreme Court stressed the importance of disclosing "[o]fficial information that sheds light on an agency's performance of its statutory duties . . . ." 489 U.S. at 773. The Court was quick to note, however, that the purpose of the FOIA

> is not fostered by disclosure of information about private citizens that is accumulated in various governmental files *but that reveals little or nothing about an agency's own conduct.* In this case—and presumably in the typical case in which one private citizen is seeking information about another—the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records.

Id. Disclosing a defendant's rap sheet "would provide details to include in a

news story, but, in itself, this is not the type of public interest for which Congress enacted the FOIA." Id. at 774. Accordingly, the Court held that Exemption 7(C) applied.

In Karantsalis, the newspaper argued that releasing booking photos would reveal "whether [the detainee] received preferential treatment" by the DOJ, indicating that "smirks and smiles" would indicate such treatment. 635 F.3d at 504. The court was not persuaded, stating that "[c]ommon sense suggests that if a prisoner were receiving preferential treatment, he or she would not flagrantly display—and risk losing—such preferential treatment by smiling or smirking in a booking photograph." Id. Moreover, the court held that public curiosity about the facial expression of a detainee was not a significant public interest outweighing a detainee's personal privacy interest in a booking photo. Id.

Finally, in Times Picayune, the district court noted that "a court must measure the public interest of disclosure solely in terms of [the objective of the FOIA], rather than on the particular purpose for which the document is being requested." 37 F. Supp. 2d at 479. Therefore, the public interest should be measured in light of alerting citizens as to "what their government is up to." Id. (citing Reporters Comm., 489 U.S. at 773). In that case, the Times Picayune claimed that releasing Mr. DeBartolo's mug shot would show that his "wealth and status has not exempted him from the procedures utilized in connection with all individuals charged with federal crimes." 37 F. Supp. 2d at 480. Furthermore,

- 11 -

the newspaper argued that the disclosure of booking photos generally would alert the public to prisoner abuse or coerced confessions. Id. The court held that the asserted public interests in this case were "hypothetical [in] nature" and that the other TV coverage of Mr. DeBartolo's trial would be more than adequate to prove that he had not been abused. Id.; see also, U.S. Dep't of State v. Ray, 502 U.S. 164, 179 (1991) (stating that mere speculation about hypothetical public benefits cannot outweigh significant privacy interests for purposes of FOIA Exemption 6).

In Detroit Free Press, the Sixth Circuit found that there was absolutely *no individual privacy interest* in preventing the disclosure of federal booking photos, and therefore there was "no need . . . to determine whether such an invasion would be *warranted*." 73 F.3d at 98. Therefore, the court spent little time discussing the third element of the test other than to mention that a booking photo of Rodney King would have alerted the public as to his abuse at the hands of police. Id.

Tulsa World argues that several public interests will be furthered by disclosing the photos, namely:

(1) determining the arrest of the correct detainee
(2) detecting favorable or unfavorable or abusive treatment
(3) detecting fair versus disparate treatment
(4) racial, sexual, or ethnic profiling in arrests
(5) the outward appearance of the detainee; whether they may be competent or incompetent or impaired
(6) a comparison in a detainee's appearance at arrest and at the time of trial
(7) allowing witnesses to come forward and assist in other arrests and

solving crimes
(8) capturing a fugitive
(9) to show whether the indictee took the charges seriously

Aplt. Reply Br. 23-24.  Based on the purpose of the FOIA, there is little to suggest that disclosing booking photos would inform citizens of a government agency's adequate  performance of its function.  We agree with the district court that "disclosure of federal booking photographs is not likely to contribute significantly to public understanding of federal law enforcement operations or activities."  World Pub. Co., 2011 WL 1238383, at *17.  Interests 1, 7, and 8 relate to the public's ability to assist federal law enforcement—not to the ability of citizens to know how well the government is performing its duties.  Interest 9 also says nothing about law enforcement's successful performance of its role.  Finally, while it is true that Interests 2-6 are legitimate public interests under the FOIA, there is little to suggest that releasing booking photos would significantly assist the public in detecting or deterring any underlying government misconduct.  See Times Picayune, 37 F. Supp. 2d at 479-80.  For example, a booking photo may indicate just as much about pre-arrest conduct of a detainee as post-arrest conduct by law enforcement.  There is also little to indicate that the release of booking photos would allow the public to detect racial or ethnic profiling without more information, and profiling has not been alleged here.[1]  See Ray, 502 U.S. at

_____

[1]It is important to remember that, while we apply a categorical approach as required by Reporter's Committee, it is possible to envision a narrow set of circumstances that might justify an as-applied approach.  See SafeCard Servs.,

- 13 -

179 ("Mere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy.").  Despite the holding in <u>Detroit Free Press</u>, when the public interest is balanced against the privacy interest in a booking photo, Tulsa World's request would not further the purpose of the FOIA.

B.     <u>The District Court Did Not Err in Denying Tulsa World's Fed. R. Civ. P. 56(d) Motion</u>

Discovery rulings, including rulings on Fed. R. Civ. P. 56(d) requests, are reviewed for an abuse of discretion.  <u>See</u> <u>Murphy v. Deloitte & Touche Group, Ins. Plan</u>, 619 F.3d 1151, 1164 (10th Cir. 2010).  In general, FOIA request cases are resolved on summary judgment.  <u>See</u> Aplt. Br. 28; <u>Trentadue v. Fed. Bureau of Investigation</u>, 572 F.3d 794, 807-08 (10th Cir. 2009); <u>see</u> <u>also</u> <u>Miscavige v. I.R.S.</u>, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment.").  The decision whether to allow discovery in FOIA cases is left largely to the discretion of the district court judge. <u>See</u> <u>Murphy</u>, 619 F.3d at 1164.  "Discovery relating to the agency's . . . exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face, and a district court may forgo

Inc. v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (finding that, "unless access to . . . [information] is necessary *in order to confirm or refute compelling evidence* that the agency is engaged in illegal activity, such information is exempt from disclosure"(emphasis added)); see also Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 666 (D.C. Cir. 2003) (affirming SafeCard rule).  If a request was made on the basis of case-specific "compelling evidence" of illegal activity, release might be appropriate after going through the proper Reporter's Committee analysis.

discovery and award summary judgment on the basis of submitted affidavits or declarations." Wood v. Fed. Bureau of Investigation, 432 F.3d 78, 85 (2d Cir. 2005) (internal quotations omitted). After reviewing the district court's treatment of each type of discovery requested by Tulsa World, we hold that the court did not abuse its discretion in denying discovery. See World Pub. Co., 2011 WL 1238383, at *5-*8.

AFFIRMED.